Docket No. 109463.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

WRIGHT DEVELOPMENT GROUP, LLC, Appellee, v. JOHN WALSH *et al.* (John Walsh, Appellant).

*Opinion filed October 21, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justices Thomas and Burke.

## OPINION

In this appeal, we are asked if defendant John Walsh's statement to a reporter made during a public forum inside an alderman's office was immunized from a defamation lawsuit under the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2008)). The trial court found the statement was not immune from suit. The appellate court dismissed Walsh's appeal as moot. No. 1–08–2783 (unpublished order under Supreme Court Rule 23). For the following reasons, we reverse and remand.

## BACKGROUND

The following facts are found in the record and are not in dispute. Two limited liability companies, Sixty Thirty LLC and Wright Management, LLC, and two individuals, W. Andrew Wright and his son James A. Wright, were involved in the conversion of a 22-story, 262-unit condominium building at 6030 North Sheridan Road in Chicago. Andrew and James Wright are members of both Sixty Thirty and Wright Management. Andrew and James Wright are also members of a third limited liability company, the present plaintiff, Wright Development Group, LLC. Wright Development, Wright Management, and Sixty Thirty all share the same business address in Palatine.

Defendant John Walsh purchased a unit at 6030 North Sheridan Road (hereinafter 6030 building) and later became the 6030 N. Sheridan Condominium Association's president. On May 5, 2006, the Association filed a lawsuit in the circuit court of Cook County alleging, *inter alia*, fraud against various persons and entities responsible for the conversion of the building into condominiums. The defendants in the 6030 building lawsuit included Sixty Thirty, Wright Management, and Andrew and James Wright. Wright Development Group, LLC, was not a named defendant.

On July 10, 2007, a public meeting was held at the office of the local alderman, Mary Ann Smith. The alderman's chief of staff indicated the purpose of the meeting was to provide the local residents of the 48th ward with a public forum to communicate the problems they had experienced with developers and contractors building and renovating condominium buildings in the ward. A public notice stated the purpose of the meeting was to obtain public input for a proposal to reform the Municipal Code with respect to the sale of condominiums.

Walsh attended the public meeting with another 6030 building resident, Mark Hrycko. Walsh stated he attended the meeting for the purpose of providing information to his elected representative and her staff regarding problems his condominium association experienced with the developers of his condominium building. Out of the dozens in attendance, approximately 12 persons spoke at the meeting, which was moderated by two aldermanic representatives. During the meeting, Walsh raised his hand, stood up, and discussed the repairs

at his building and the lawsuit against the developer. Other citizens also shared their experiences and problems with condominium construction in the area. After the formal question and answer session had ended, they remained at the office for approximately 15 or 20 minutes, standing with the other participants in a "mingling" session with representatives from the alderman's office.

During this mingling session, Walsh spoke with other citizens about the problems with their buildings. As he was walking toward the exit, Walsh was approached by a staff reporter for a local newspaper, Lorraine Swanson. According to Walsh, the reporter asked him and other citizens "follow up" questions relating to the earlier provided information. Walsh believed his discussions with the reporter were "continuing to further participate in what the purpose of the meeting was" because he discussed the problems with his building, including the association's need to take out a $1.8 million loan, and the lawsuit against the developer. Walsh did not refer to the builders as Sixty Thirty, but as the "Wright Development Group" or "the Wright Group ***. Because that's what it is. It's the Wright Group. It's the Wrights." He stated, "whenever I think of the developer, I think of the Wrights *** because to me that's the developer ***. I think of Andrew and Jamie." He was unaware of the full, specific name "Wright Development Group, LLC," prior to the lawsuit.

Walsh then left the meeting with Hrycko while aldermanic staff remained in the office in discussion with other citizens. Walsh later received a phone call from the reporter requesting the developer's telephone number. Walsh and Hrycko met on another date in front of the building with a photographer to take a picture which appeared with the reporter's article. The topic of the building was not discussed at this session.

The alderman's chief of staff stated, "The information provided by 48th Ward residents at the July 10, 2007, meeting was used by Alderman Smith and her staff for the purpose of developing legislative measures to halt fraud and misconduct by developers and contractors building or renovating condominium buildings." Alderman Smith further asked a special task force established by the City of Chicago's law department to investigate the outstanding problems experienced with certain buildings discussed at the public

meeting. The City of Chicago's law department filed suit against several developers, general contractors, and lenders.

Walsh's statements to the reporter were republished on August 8, 2007, in the Pioneer Press by Pioneer Newspapers, Inc., and Sun-Times Media Group, Inc. The newspaper article, entitled "Condo boom creates glut of horror stories," referred to "Wright Development Group." The introductory paragraph to the article states: "Among the signs of saturation in the city's condominium market is the barrage of complaints from new condo owners disillusioned by what they say are shoddy construction and shady deals." The Pioneer article further provides, in part:

> "After racking up a $1.8 million special assessment, an Edgewater condominium association sued Wright Development Group, developers of a 22-story, 262 unit conversion building at 6030 N. Sheridan Rd., for fraud. Residents said that when they bought their units, the developers told them that the building had a new roof and elevator system.
>
> 'The roof was actually a liquid membrane placed over seven layers of old, bad roof. All of the roofing had to be removed down to the concrete deck, with a completely new roof installed,' said John Walsch [*sic*], president of the 6030 N. Sheridan Road Condominium Association.
>
> While the elevator cabs were brand spanking new, the mechanical and electrical equipment was the same from when the building was first built 50 years ago. The night before the condominium association was to take over the building from the developers and assume legal responsibility for its maintenance and upkeep, the developers allegedly contracted a new management company and retained an attorney to represent the condominium association.
>
> 'We said no, and fired the management company and attorney,' Walsch [*sic*] said."

The remainder of the article detailed other citizen complaints and a plan of action by the City's law department.

On October 4, 2007, Wright Development filed a complaint for defamation action against John Walsh, Pioneer Newspapers, Inc., and

-4-

Sun-Times Media Group, Inc., alleging defamation *per se*. The complaint alleges "at the time Walsh published the false statements to Ms. Swanson, Walsh, as the president of the Association, knew the true identity of the developer of the Building to be Sixty Thirty, LLC and not Wright [Development]." Walsh and the other defendants responded to the complaint with various motions to dismiss under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2008)). Prior to the completion of the briefing schedule on those motions, Walsh filed a separate motion to dismiss, entitled "Motion to Dismiss Plaintiff's Complaint" pursuant to the Citizen Participation Act (735 ILCS 110/1 *et seq.* (West 2008)). In this motion, Walsh asserted that Wright Development's lawsuit was a "strategic lawsuit against public participation," or "SLAPP" (735 ILCS 110/5 (West 2008)), which should be dismissed under the Act. Walsh sought a stay of the briefing on the various previously filed section 2–615 motions.

Walsh presented this motion under the Act to the trial court on April 21, 2008. On that date, the trial court stayed all further action, including briefing and discovery, on the section 2–615 motions. The trial court, pursuant to section 20 of the Act, limited Wright Development's discovery to "the issue of whether Walsh's acts are not immunized, or were not in furtherance of acts immunized from, liability under the Citizen Participation Act." Discovery included depositions of Walsh and Hrycko.

On July 29, 2008, the trial court held a hearing on Walsh's motion under the Act. At the hearing, the trial court ruled in open court in favor of Wright Development and denied Walsh's motion. In an oral statement, it held Walsh's statement to the reporter fell beyond the scope of the Act:

> "Because I don't see the Act applying to statements that are made to a reporter after a meeting because the Act talks about giving you the right to address the government about your grievances, and it doesn't give you the right to–it doesn't immunize you from every step that you are ever going to make outside of the meeting, and that's why I thought–because we had all this controversy about whether or not this reporter should be deposed. And that's why I said just take this deposition of the defendant first because I kind of

suspected when he had that photograph of him outside of the building that there was some communication that took place over and above the meeting itself. And then as I read his entire deposition and there is plenty of communication, in fact, most of it took place outside of the meeting. So I don't think the Act really applies here."

In a subsequent colloquy with Walsh's counsel, the circuit court explained its understanding of the facts and of the Act:

"[Counsel]: I want to make sure that you did have an opportunity to review the reply brief because in the deposition [Walsh] stated that the conversations that he had with the reporter were at the end of the meeting but were still in the Alderman's office.

COURT: Doesn't matter.

[Counsel]: *** And, finally, his depositions show that all of the statements that were made to the reporter were made at the Alderman's office, and the picture was taken at a different time by a photographer. The only other conversation that Mr. Walsh had with the reporter was when the reporter called him to try to get the Wright's telephone number. He gave them the telephone number. So it's our belief that these were acts in furtherance of acts that are protected by–.

COURT: Well, you look at the definition even of acts in furtherance and it says 735 ILCS 110/15 acts in furtherance *** you are not even trying to procure favorable governmental action at that point because the Alderman's representative has left the room.

[Counsel]: Your Honor, that's untrue. The deposition states that the Alderman's representative was still in the building when he left.

COURT: Well he had adjourned the meeting.

[Counsel]: Well, that is subject to dispute too your honor because our issue is that he was still at the Alderman's office as part of this public forum. There was a separate mingling session for which the Alderman's representatives were engaged in, and Mark Hrycko also stated that when he and Mr. Walsh left the building, citizens were still there. They

were still discussing issues with the Alderman's representatives. So we don't believe the meeting ever ended.

COURT: Shouldn't this statute–I mean, I didn't look up any statutory construction tenets, but the interpretation of the common law, doesn't it have to be strictly construed?

[Counsel]: No, your honor, in fact, it actually says that it should be liberally construed.

COURT: Oh, okay.

[Wright Development's Counsel]: It does say that, your honor."

The circuit court then asked Wright Development's counsel if Wright Development deserved attorney fees. After plaintiff's counsel responded in the negative, the trial court entered an order reflecting its rulings.

On August 12, 2008, Walsh filed a motion to reconsider or, alternatively, to enter Rule 308 findings (155 Ill. 2d R. 308). Rule 308 findings were requested because, while section 20(a) of the Act provides for an immediate right to appellate review of an order denying a motion to dismiss (735 ILCS 110/20(a) (West 2008)), a coordinate provision allowing an interlocutory appeal within the supreme court rules does not currently exist.[1] Accordingly, Walsh filed a motion requesting the trial court to reconsider its ruling, or, alternatively, to enter findings consistent with Supreme Court Rule 308 so proper jurisdiction would be conferred to obtain immediate appellate review. The trial court denied these motions on August 19, 2008. The trial court also entered orders to resume briefing on the section 2–615 motions.

Shortly after ruling on Walsh's motion under the Act, the circuit court granted Walsh's earlier filed section 2–615 motion to dismiss, and held Walsh's statements were not actionable under the innocent construction rule. It stated,

"This court feels that the statements in the article are

---

[1]Currently being considered is an amendment to Supreme Court Rule 306 to allow a permissive immediate appeal of the denial of a motion to dispose under the Citizens Participation Act.

capable of an innocent construction in that they are simply referring to what was alleged in a pending lawsuit ***. What is clear, though, is that there were at least three defendants in the lawsuit with the name Wright. Also, the article references 'Wright Development Group' and not the actual plaintiff herein 'Wright Development Group, LLC.' Plaintiff cannot have it both ways. *** The reference in the article can be innocently construed as referring to the group of Wright entities and individuals who were involved in the lawsuit. As defendants correctly point out, the article consistently refers to 'developers' and not to a single entity such as plaintiff. Based upon this finding, it is irrelevant whether Walsh is or the media defendants are responsible for the reference to 'Wright Development Group' in the article."

Accordingly, the circuit court dismissed Wright Development's complaint with prejudice.

After final judgment was entered in the circuit court, Walsh filed an appeal before the appellate court of the two interlocutory orders denying relief pursuant to the Act. He asserted he was denied his statutory immunity and mandatory attorney's fees under the Act. Because his section 2–615 motion was successful, Walsh did not appeal the findings in the actual September 26, 2008, final judgment order. Wright Development requested cross-relief regarding the September 26 section 2–615 dismissal order. The record does not reveal any motion to dismiss the appeal.

The appellate court, *sua sponte*, entered a Rule 23 order dismissing Walsh's appeal as moot. It stated, "In essence, Walsh got exactly the relief he sought (*i.e.*, dismissal of the complaint), albeit on a different basis (*i.e.*, pursuant to section 2–615 rather than the Act). Walsh's issue is moot because he has already obtained the relief he sought and, any action by this court would constitute an advisory opinion." No. 1–08–2783 (unpublished order under Supreme Court Rule 23). We allowed Walsh's petition for leave to appeal. 210 Ill. 2d R. 315. Wright Development has not requested cross-relief from this court regarding the dismissal of its complaint.

ANALYSIS

-8-

SLAPPs, or "Strategic Lawsuits Against Public Participation," are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so. See generally P. Canaan & G. Pring, *Strategic Lawsuits Against Public Participation*, 35 Soc. Probs. 506 (1988). SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to silence citizen participation. 735 ILCS 110/5 (West 2008). To guard against the chilling effect of SLAPPs, at least 24 states have passed anti-SLAPP statutes. See L. Long, Note, *Slapping Around the First Amendment: An Analysis of Oklahoma's Anti–SLAPP Statute and its Implications on the Right to Petition*, 60 Okla. L. Rev. 419, 421 n.27, 422 n.28 (Summer 2007) (citing statutes). In 2007, the Illinois General Assembly enacted anti-SLAPP legislation embodied in the Citizen Participation Act (735 ILCS 110/1 *et seq*. (West 2008)).

In the Act's "public policy" section, the legislature states there has been "a disturbing increase" in SLAPPs in Illinois. 735 ILCS 110/5 (West 2008). The Legislature observed, "The threat of SLAPPs significantly chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights." 735 ILCS 110/5 (West 2008). The Act explains, "The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to effective law enforcement, the operation of government, the making of public policy and decisions, and the continuation of representative democracy." 735 ILCS 110/5 (West 2008). The Act further notes SLAPPs are an "abuse of the judicial process" which "can and ha[ve] been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs." 735 ILCS 110/5 (West 2008).

The Act states four explicit goals are in the "public interest." 735 ILCS 110/5 (West 2008). First, the Act attempts "to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government." 735 ILCS 110/5 (West 2008). Second, it attempts "to protect and encourage public participation in government to the maximum extent permitted by law." 735 ILCS 110/5 (West 2008). The third purpose is "to establish an efficient process for identification and adjudication of SLAPPs."

735 ILCS 110/5 (West 2008). Finally, the Act "provide[s] for attorney's fees and costs to prevailing movants." 735 ILCS 110/5 (West 2008).

The Act seeks to extinguish SLAPPs and protect citizen participation by: (1) immunizing citizens from civil actions based on acts made in furtherance of a citizen's free speech rights or right to petition government (735 ILCS 110/15 (West 2008)); (2) establishing an expedited legal process to dispose of SLAPPs both before the trial court and appellate court (735 ILCS 110/20 (West 2008)); and (3) mandating a prevailing movant be awarded reasonable attorney fees and costs incurred in connection with the motion (735 ILCS 110/25 (West 2008)). The legislature provided the "Act shall be construed liberally to effectuate its purposes and intent fully." 735 ILCS 110/30(b) (West 2008).

Whether the Appeal Is Moot

Illinois courts "do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Walsh argues the appellate court's dismissal should be reversed because the legislature clearly intended for the Act to provide an independent and substantive right to appellate review of final trial court orders denying a motion to dispose of a lawsuit brought pursuant to the Act. Walsh continues that the appellate court's dismissal order ignored basic tenets of statutory construction because it failed to address the new rights conferred by the Act and the legislature's intent when it enacted the statute. Wright Development asserts that Walsh's sole basis to seek an appeal is the attorney fees; therefore, the case is moot because there are no substantive issues left to decide and any decision by this court would merely be an advisory opinion. We agree with Walsh. The determination of whether an appeal is moot is a question of law to be reviewed *de novo*. *In re Alfred H.H.*, 233 Ill. 2d at 350.

The purpose of the Act is to give relief, including monetary relief, to citizens who have been victimized by meritless, retaliatory SLAPP lawsuits because of their "act or acts" made "in furtherance of the constitutional rights to petition, speech, association, and participation

-10-

in government." 735 ILCS 110/15 (West 2008). As an expression of intent to "protect and encourage public participation in government to the maximum extent permitted by law" (735 ILCS 110/5 (West 2008)), the legislature deemed the mere dismissal of SLAPP lawsuits insufficient. The legislature has expressly stated it is in the "public interest" to "establish an efficient process for identification and adjudication of SLAPPs." 735 ILCS 110/5 (West 2008). As part of this process, if a trial court denies a motion under the Act, the Act directs the appellate court to "expedite" an appeal of a circuit court order "whether interlocutory or not." 735 ILCS 110/20(a) (West 2008). The Act also directs the appellate court to provide expedited treatment of a trial court's failure to rule on an Act motion. 735 ILCS 110/20(a) (West 2008). The instant appellate court's failure to undertake the question of whether the plaintiff's lawsuit could be identified as a SLAPP directly contradicts the legislature's explicit expression of public policy regarding the efficient process to identify and adjudicate SLAPPs. 735 ILCS 110/5 (West 2008). The mootness finding also contradicted the legislature's express finding of public policy in favor of an award attorney fees and costs to prevailing movants. 735 ILCS 110/5 (West 2008).

Further, there was, in fact, a potential injury to Walsh. Walsh was denied the relief requested in his Act motion to identify Wright Development's lawsuit as a SLAPP and for a statutory award of attorney fees and costs–an entitlement not available with the mere section 2–615 dismissal. The appellate court therefore erred when it stated Walsh "has already obtained the relief he sought and, any action by this court would constitute an advisory opinion." If indeed Wright Development's action was a SLAPP suit, then the appellate court's ruling also relieves Wright Development of the punishment which the Act imposes upon entities who chill the exercise of constitutional rights by use of meritless and retaliatory lawsuits. Thus, the appellate court ruling frustrates the legislature's expression of the public interest, withholds the relief provided by the Act for true SLAPP defendants, and constitutes a nullification of a principal part of the anti-SLAPP legislation. Accordingly, Walsh's appeal is not moot.

Immunity

-11-

We next review the trial court's ruling regarding whether defendant enjoyed immunity under the Act. The trial court's denial of Walsh's motion was based upon an interpretation of the Act. Accordingly, because a question of law is presented, we apply the *de novo* standard of review. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39 (2010).

To trigger immunity, section 20 of the Act sets forth specific procedures for adjudicating a motion to dispose of a "claim" which is "based on, relates to, or is in response to" the exercise of a citizen's constitutional rights. 735 ILCS 110/20 (West 2008). For purposes of the Act, a purported victim of a SLAPP is the "moving party" (735 ILCS 110/10 (West 2008)) who files a "motion," which includes "any motion to dismiss, for summary judgment, or to strike, or any other judicial pleading filed to dispose of a judicial claim." 735 ILCS 110/10 (West 2008). The trial court must hold a hearing and render a decision on that motion within 90 days after the date the responding party receives notice of the motion. 735 ILCS 110/20(a) (West 2008). During this time, discovery is suspended except on the issue of whether there is immunity under the Act. 735 ILCS 110/20(b) (West 2008). To overcome the immunity, a responding party is required to produce "clear and convincing" evidence demonstrating the "act or acts" at issue were "not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20 (West 2008).

Turning to the instant case, section 15 of the Act requires Walsh, as the moving party, to show Wright Development's defamation complaint is "based on, relates to, or is in response to" acts Walsh made "in furtherance" of his "rights of petition, speech, association, or to otherwise participate in government." 735 ILCS 110/15 (West 2008). Acts in "furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2008). According to the Act, "government" includes any "branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority *including the electorate*." (Emphasis

-12-

added.) 735 ILCS 110/10 (West 2008).

The gravamen of Wright Development's defamation claim is the statement Walsh made in an alderman's office to a reporter concerning statements he had made at the official public meeting. This is clearly immunized activity. According to the uncontroverted deposition testimony of Walsh and Hrycko, the statements regarding the building issues at 6030 N. Sheridan were made inside the alderman's office while the alderman's staff continued to converse with meeting participants in the mingling session. The statements to the reporter addressed a public matter–the problems of condominium conversion and draft legislation–in furtherance of his right to petition the government. These statements were in response to Alderman Smith's public notice and addressed the subject matter of his testimony and the public meeting. At the very least, these statements affected the 262 unit owners at the 6030 building. They also potentially affected citizens of the 48th Ward and the City at large.

Therefore, Walsh's statements were "in furtherance of" his rights to speech, association, petition or otherwise participate in government because the Act expressly encompasses exercises of political expression directed at the *electorate* as well as government officials. *Cf. Global Waste Recycling, Inc. v. Mallette*, 762 A.2d 1208 (R.I. 2000) (rejecting the argument that statements must be made *before* some type of governmental body and not to the public via the print media); *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743 (R.I. 2004) (letters to the editor were protected by the Rhode Island anti-slapp statute). We therefore turn to whether Wright Development met its burden under the Act.

### Wright Development's Burden of Proof Under the Act

Because Walsh, as the moving party, met his burden under section 15 to show the complaint is "based on, relates to, or is in response to" Walsh's acts in furtherance of his constitutional rights, section 20(c) of the Act shifts the burden of proof to the responding party, Wright Development. See 735 ILCS 110/15, 20(a), (c) (West 2008). Section 20 requires the responding party to produce "clear and convincing evidence" demonstrating the defendant's statements "are not immunized from, or are not in furtherance of acts immunized from,

liability by this Act." 735 ILCS 110/20 (West 2008).

Wright Development principally argues Walsh's petitioning activity was a "sham" or not "genuinely aimed at procuring favorable government action, result, or outcome." Wright Development contends Walsh's deposition transcript constitutes clear and convincing evidence in support of this argument. Wright Development repeatedly alleges throughout its brief Walsh "admitted" that he "lied" and "knowingly" and "intentionally" defamed Wright Development by misnaming "Wright Development Group" instead of Sixty Thirty as the building developer when he spoke to the newspaper reporter.

Wright Development has not met its burden. Rather, Wright Development presents a fraction of the truth. Walsh testified as follows in response to Wright Development's counsel's questions:

"Q. And why did you say it's the group of the Wrights versus the Wright Group when you knew that the developer of the building was 6030 LLC?

A. Because that's the only thing I could think of when I was doing it, when I was saying it.

Q. You couldn't think of the developer being 6030, LLC?

A. No. I just–Whenever I think of the developer, I think of the Wrights.

Q. Why is that?

A. Because to me, that's the developer.

Q. Which Wrights do you think of?

A. I think of Andrew and Jamie.

Q. And when you are speaking to the reporter, that's who you were thinking of?

A. Yes.

Q. That's what you were trying to communicate to the reporter?

A. Uh-huh, yes."

The unrebutted testimony by Walsh in his deposition establishes at the time Walsh made reference to the "Wright Development Group" in his conversation with the reporter, he was referring to the group of

-14-

individuals and business entities which were the defendants in the condominium-conversion lawsuit. Andrew and James Wright are members of Sixty Thirty LLC and are the live persons who interacted with Walsh. Walsh's deposition testimony further reveals that he was unaware of the existence of the distinct corporate entity known as "Wright Development Group, LLC," as he stood speaking with the reporter during the mingling session. Further, the record shows the members of Wright Development are functionally enmeshed with Wright Management LLC, and Andrew Wright and James Wright are parties to the dispute over the Sixty Thirty project. Walsh's description of the developers of the Sixty Thirty project appeared true on its face and turned out to be true in substance.

When viewed in this context, the natural reading of the Pioneer article is as a reference to the "group" involved in the condominium conversion and not the separate corporate entity–"Wright Development Group, LLC"–which filed the defamation suit. The trial court ruled similarly when it dismissed Wright Development's complaint under section 2–615. Thus, Wright Development has not produced "clear and convincing evidence" demonstrating Walsh's statements "are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20 (West 2008).

We turn to the trial court's distinction concerning the statement "after" the meeting. The Act makes no such restriction. By its terms, the Act applies to "any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to *any act or acts* of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." (Emphasis added.) 735 ILCS 110/15 (West 2008). Included in the definition of "government" is "the electorate." 735 ILCS 110/10 (West 2008). Therefore, nothing in the words "any act or acts" suggests a requirement of direct appeal to a government official.

Further, the Act does not limit the protected rights to petitioning the government only. The Act plainly includes the rights to "speech" and "association" as well. 735 ILCS 110/15 (West 2008). As these rights are to "be encouraged and safeguarded with great diligence," the legislature has provided that the Act is to be "construed liberally."

-15-

735 ILCS 110/30 (West 2008). This clearly applies to Walsh's statement to a reporter made during a public forum concerning proposed legislation targeting condominium conversions. The trial court's misreading, based on its erroneous belief that the Act be strictly construed, has no basis in the statutory language and is antithetical to the legislature's express provisions.

Each of Wright Development's remaining case law citations are distinguishable on their facts because they are based on Wright Development's rejected and unsubstantiated assertion that the Walsh's deposition shows he was intentionally lying. See, *e.g.*, *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993); *McDonald v. Smith*, 472 U.S. 479, 86 L. Ed. 2d 384, 105 S. Ct. 2787 (1985); *Stahelin v. Forest Preserve District*, 376 Ill. App. 3d 765 (2007). Accordingly, Wright Development has failed in its burden under the Act.


Wright's Separation of Powers Argument

Wright Development argues that the Citizen Participation Act is unconstitutional due to a separation of powers violation in that, for example, it directs a trial court to dispose of a motion under the Act within 90 days. Walsh responds that this argument is forfeited because the argument is raised for the first time before this court. We agree with Walsh. Wright Development did not raise this claim in the circuit court. This claim also does not appear in Wright Development's appellate court briefs. We find the issue is not properly before us. See, *e.g.*, *City of Champaign v. Torres*, 214 Ill. 2d 234, 240 n.1 (2005); *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 567-68 (1988); *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 550 (1983).


Whether Walsh Is Entitled to Fees and Costs

The Act provides: "The court shall award a moving party who prevails in a motion under this Act reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25 (West 2008). Walsh has prevailed. As Walsh is the prevailing party, we remand to the trial court to determine all reasonable attorney fees

and costs incurred in connection with the motion as provided by the Act.

CONCLUSION

The trial court erred when it denied the motion under the Act. The appellate court erred when it dismissed the appeal as moot. We therefore reverse the judgment of the appellate court and the trial court orders entered on July 29, 2008, and August 19, 2008, and hold John Walsh enjoyed immunity from liability in this lawsuit under the Citizen Participation Act. We remand the cause to the circuit court to award Walsh reasonable attorney fees and costs incurred in connection with the motion.

*Reversed and remanded.*

JUSTICE FREEMAN, specially concurring:

I agree with the court that this case must be remanded. I write separately only to address how litigation under the Citizen Participation Act must proceed, an important matter that is unfortunately overlooked in today's opinion.

The court correctly holds that the Act seeks to immunize citizens from civil actions based on acts made in furtherance of a citizen's free speech rights or right to petition government. Slip op at 11. Statutory immunity provisions are not uncommon–the Tort Immunity Act being a prime example. Section 15 of the Act does not, however, create a "stand-alone" motion as the court implies. See slip op. at 5, 7, 11, 16 (referring to the movant's motion variously as a "motion under the Act or as an "Act motion"). Section 15 states in relevant part:

> "This Act applies to any motion to dispose of a claim *** on the grounds that the claim is based on, relates to, or is in response to any act or acts *** of the moving party's rights of petition, speech, association, or to otherwise participate in government.

> Acts in furtherance of [those rights] are immune from liability ***." 735 ILCS 110/15 (West 2008).

-17-

Section 10 defines "motion" to include "any motion to dismiss, for summary judgment, or to strike, or any other judicial pleading filed to dispose of a judicial claim." 735 ILCS 110/10 (West 2008). Section 20 then expressly addresses considerations for disposition of such motions including, for example, when hearings must be held and the standard of proof the responding party must meet to defeat the motion. 735 ILCS 110/20 (West 2008). Section 20 also provides that the appellate court "shall expedite any appeal or other writ, whether interlocutory or not, from a trial court order denying that motion." 735 ILCS 110/20(a) (West 2008).

These statutory provisions make clear that there is no such thing as an "Act motion," as the court would have it. A movant can seek dismissal based on the immunity granted by the Act under section 2–619(a)(9) for example. Such a motion allows for dismissal when the claim asserted against the defendant is barred by other "affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2–619(a)(9) (West 2008). The affirmative matter referred to encompasses "all defenses which rely on allegations which are not negations of the essential allegations of the plaintiff's cause of action." See 4 R. Michael, Illinois Practice §41.7, at 331 (1989). The use of a section 2–619 motion here would be no different than the use of the motion to seek dismissal under the Tort Immunity Act. See *Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962 (1983) (and cases cited therein). Other examples of affirmative matter include, in defamation cases, defenses based on privilege, the innocent construction rule, fair comment and truth. See 4 R. Michael, Illinois Practice §41.7, at 331-32 (1989) (collecting cases).

Accordingly, movants asserting immunity under the Act must do pursuant to the normal means provided under the Code of Civil Procedure, as section 10 expressly directs. The movant here might have availed himself of section 2–619(a)(9) to seek dismissal on the basis of immunity conferred by section 15 of the Act. See *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993) (noting practice under section 2–619 motions); 4 R. Michael, Illinois Practice §41.8, at 333-35 (1989) (explaining that determination of a section 2–619 motion can be made as a matter of law on affidavits alone or at the conclusion of an evidentiary hearing).

In any section 2–619(a)(9) motion to dismiss, once an affirmative matter is properly raised which could defeat the claim, the plaintiff must then come forward with some evidence at least establishing a genuine issue of material fact, otherwise the motion will be granted. The only additional burden established by the Act on a plaintiff is that the plaintiff is required to come forward with clear and convincing evidence that a genuine issue of material fact exists in order to defeat the motion. 735 ILCS 110/20(c) (West 2008). If such a material fact exists that cannot otherwise be resolved within the statutory provisions of section 2–619, denial of the motion would be proper.

The use of a section 2–619 motion would also avoid questions concerning appellate jurisdiction. If the motion is granted, attorney fees can then be awarded in furtherance of the legislative intent, and an appeal can follow normally as an appeal from a final judgment under Rule 302 (210 Ill. 2d R. 302). If the section 2–619 motion is denied, however, the movant should ask the trial judge for a Rule 304(a) finding. See 210 Ill. 2d R. 304(a). Under that rule, an appeal may be taken from a final judgment as to one or more claims if the trial judge expressly finds that there is no just reason to delay the appeal. 210 Ill. 2d R. 304(a). The denial of a section 2–619 motion based upon the Act would be a final judgment as to the ability of the defendant to recover statutory attorney fees and costs, as the court correctly notes. Slip op. at 11. By granting such a request, trial judges would be giving effect to the legislative intent reflected in section 20(a) of the Act, *i.e.*, that interlocutory appeals arising under the Act be heard sooner rather than later. This would further alleviate the need to amend the supreme court rules, in particular Rule 306, as is noted in today's opinion. Slip op. at 7 n.1

This case represents the court's first opportunity to address this relatively new piece of legislation yet the court fails to make clear how the Act's provisions are to be properly incorporated into the course of a lawsuit. At oral argument, one member of this court asked specifically about how the use of a free-standing motion fits within pretrial motion practice, particularly with respect to appeals from denials of such motions. That question is not answered today. Instead, the court's opinion virtually guarantees the filing of more stand-alone "Act motions" in lawsuits such as this. This is problematic because already the appellate court has called the constitutionality of the Act's

-19-

interlocutory appeal provisions into question. *Mund v. Brown*, 393 Ill. App. 3d 994 (2009). In *Mund v. Brown*, the movant filed a stand-alone motion seeking dismissal pursuant to the Act. The trial court denied the motion, and the movant attempted to appeal the denial. The appellate court raised the issue of appellate jurisdiction *sua sponte*. In responding to the court's jurisdictional concerns, the movant argued that section 20 of the Act granted jurisdiction. In rejecting the argument, the appellate court noted that article VI, section 6, of the Illinois Constitution grants to the supreme court alone the power to make rules governing interlocutory appeals. Thus, a statute purporting to grant a right to an interlocutory would not only violate section 6 of the Constitution but would also violate the separation of powers clause contained in article II, section 1. The appeal was then dismissed for lack of jurisdiction. *Mund v. Brown*, 393 Ill. App. 3d at 998-99 (petition for leave to appeal denied November 25, 2009).

*Mund* raises serious constitutional questions. Those litigants who file the free-standing motion referred to in today's opinion will face the same jurisdictional hurdle that the movant in *Mund* did. Presently, and presumably until Rule 306 is officially amended, there is no supreme court rule by which the denial of the free-standing motion can be appealed. If a supreme court rule does not grant the right to appeal from a nonfinal judgment, then there is no right to an interlocutory appeal and the appellate court does not have jurisdiction to hear the appeal. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93 (2004).

In my view, this court should make explicit that the Act operates only in conjunction with normal practice under the Code of Civil Procedure. Doing so avoids the constitutional questions that arise with respect to appellate jurisdiction in cases involving interlocutory appeals taken from so-called free-standing Act motions. If the Act is interpreted as I suggest it must be, these concerns are of no moment. Through Rule 304(a), such interlocutory orders would be appealable, and the legislative intent for swift appeals can easily be achieved without constitutional concerns.

In all other respects, I join in the court's decision.

JUSTICES THOMAS and BURKE join in this special concurrence.