**2026 IL 131714**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 131714)

NICHOLAS T. ANDERSON, Appellant, v. MEAGAN M. SMITH, f/k/a Meagan M. Wohlfeil, Appellee.

*Opinion filed June 25, 2026.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Overstreet, Holder White, Cunningham, O'Brien, and Tailor concurred in the judgment and opinion.

## OPINION

¶ 1        The question presented is the appropriate framework for evaluating a motion to dispose of a "Strategic Lawsuit Against Public Participation" (SLAPP) under the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2024)), for cases

filed before January 1, 2026.[1] The Appellate Court, First District, has been applying a "meritless and retaliatory" standard to assess whether the plaintiff's claims are solely based on, related to, or in response to the movant's exercise of his or her right to participate in government (see *Ryan v. Fox Television Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 21), which the trial court here also applied in denying relief under the Act. The Appellate Court, Fourth District, below repudiated that test in favor of what it labeled a "true goal" inquiry (2025 IL App (4th) 241076, ¶¶ 47-48), and it therefore reversed the trial court's ruling and remanded for further proceedings. We agree with the appellate court below that the "meritless and retaliatory" standard does not accurately reflect the Act and controlling precedent, though we disagree with aspects of the appellate court's approach. We therefore affirm the appellate court's judgment as modified.

¶ 2                                  I. BACKGROUND

¶ 3        In 2017, plaintiff, Nicholas T. Anderson, and defendant, Meagan M. Smith, formerly known as Meagan M. Wohlfeil, attended a press conference held in a park. The press conference preceded a public hearing on a measure to approve a hog farming operation. Anderson supported the measure, whereas Smith opposed it. During an on-camera interview with another proponent of the measure, Smith stood behind the speaker holding a sign that read, "[F]arms, yes; factory farms, no." Anderson approached Smith. Although the parties disagree as to the details of their interaction, it is undisputed that Smith said, "I don't know you" and "don't touch me."

¶ 4        Smith asked a family member to call the police and told the responding officer that Anderson had pushed her, specifically by bumping his chest into her to prevent her from displaying her sign during the interview. The officer arrested Anderson for assault. Anderson denied the allegations and told the officer that he "may have brushed into [Smith's] arm." Anderson was later charged with battery but was found not guilty after a bench trial on May 31, 2019.

---

[1]The legislature amended the Act in 2025 to include, among other things, protections for the press. However, the changes "apply only to actions commenced on or after January 1, 2026," such that the amendments are inapplicable to the case before us. See Pub. Act 104-431, § 5 (eff. Aug. 21, 2025) (adding 735 ILCS 110/32).

¶ 5        Shortly before the criminal trial, Anderson filed a defamation suit against Smith on May 29, 2018. He claimed that he had attempted to hand Smith his business card at the press conference, at which point she falsely and publicly accused him of assault. Anderson subsequently filed an amended complaint and second amended complaint alleging defamation and malicious prosecution. Smith filed a countercomplaint for battery and intentional infliction of emotional distress.

¶ 6        On March 14, 2023, Smith filed a motion to dismiss under the Act pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2022)).[2] She argued that her acts were in furtherance of her right to participate in government and that Anderson's complaint was clearly based on, related to, or in response to her opposition to the hog farming operation and her report of what she believed was a crime committed against her. Smith argued that Anderson was advancing a meritless and retaliatory SLAPP subject to dismissal under the Act. The Schuyler County circuit court denied Smith's motion without prejudice in a docket entry.

¶ 7        Smith later filed a motion for summary judgment that also requested relief under the Act. The trial court denied the motion, ruling that there were triable issues of fact for the jury. The appellate court granted Smith's petition for leave to appeal under Illinois Supreme Court Rule 306(a)(9) (eff. Oct. 1, 2020).

¶ 8        The appellate court extensively cited this court's decisions in *Sandholm v. Kuecker*, 2012 IL 111443, and *Glorioso v. Sun-Times Media Holdings, LLC*, 2024 IL 130137. It noted that in *Glorioso*, we adopted a three-part, "post-*Sandholm*" test that the appellate court had been applying in the years following *Sandholm* to determine whether a lawsuit was subject to dismissal under the Act. 2025 IL App (4th) 241076, ¶ 25. The instant dispute involves the second prong of the test, for which the movant has the burden to show that the plaintiff's claims are solely based on, related to, or in response to the movant's exercise of his or her right to participate in government. *Id.*

¶ 9        The appellate court noted that *Ryan* adopted a "meritless and retaliatory" standard for the second prong following *Sandholm*, which other First District decisions followed. *Id.* ¶ 33. However, the court determined that *Ryan* improperly

---

[2]Smith did not specify a subsection of section 2-619.

attempted to ascribe legal meaning to words that *Sandholm* was using in their rhetorical sense. *Id.* ¶ 35. The appellate court reasoned that, instead, the inquiry turns on whether the plaintiff is "genuinely seeking relief," which requires the court to determine the plaintiff's subjective intent in bringing the claim. (Internal quotation marks omitted.) *Id.* ¶ 48. According to the appellate court, if the plaintiff creates a genuine factual issue about one of the prongs of the post-*Sandholm* test, the trial court must conduct an evidentiary hearing to resolve the disputed factual issues. *Id.* ¶ 75.

¶ 10    The appellate court held that the trial court improperly applied *Ryan*'s "meritless and retaliatory" standard and further failed to resolve the factual issues. *Id.* ¶ 83. It therefore reversed and remanded with directions. *Id.* ¶¶ 83-87.

¶ 11    This court allowed Anderson's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 12                                    II. ANALYSIS

¶ 13    We begin by noting that the trial court denied Smith's motion for summary judgment, which included a request for relief under the Act. The denial of a summary judgment motion is interlocutory and therefore ordinarily not appealable. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 357 (1999). However, the Act permits the moving party to seek to dispose of a SLAPP in any type of pleading filed to dispose of a judicial claim, including summary judgment (see 735 ILCS 110/10, 15 (West 2024)), and Illinois Supreme Court Rule 306(a)(9) (eff. Oct. 1, 2020) allows for permissive interlocutory appeals from orders denying a motion seeking to dismiss a lawsuit under the Act.

¶ 14    That being said, Smith asserts that we should construe her request for relief under the Act pursuant to the standards of section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2024)). In *Sandholm*, the defendants moved to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)), but we determined that a motion asserting immunity under the Act was more appropriately brought in a section 2-619(a)(9) motion, which provides for dismissal where the claim is barred by an affirmative matter avoiding the legal effect of or defeating the claim. *Sandholm*, 2012 IL 111443, ¶ 54. "Immunity from tort liability pursuant to

statute is an affirmative matter properly raised in a section 2-619 motion to dismiss." *Id.* As the review of a ruling on a motion for summary judgment is similar to the review of a ruling on a motion to dismiss under section 2-619(a)(9) (*Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003)) and a section 2-619(a)(9) motion best reflects the immunity claimed via the Act (*Sandholm*, 2012 IL 111443, ¶ 54), we will apply that standard here, as did the appellate court. We review *de novo* the denial of a motion to dismiss pursuant to section 2-619 in this context. *Glorioso*, 2024 IL 130137, ¶ 49. This case also requires us to interpret the Act, which is a question of law similarly subject to *de novo* review. *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 634 (2010).

¶ 15    SLAPPs are lawsuits that use the threat of monetary damages and/or substantial defense costs to either deter individuals from exercising their political rights or punish them for doing so. *Id.* at 630. To counter what it saw as a "disturbing increase" in the number of SLAPPs, the legislature enacted the Act in 2007. 735 ILCS 110/5 (West 2024); *Walsh*, 238 Ill. 2d at 631. The Act lists four goals: (1) "to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government"; (2) to protect and encourage maximum participation in government; (3) to create an efficient process to identify and adjudicate SLAPPs; and (3) to provide attorney fees and costs to the prevailing movants. 735 ILCS 110/5 (West 2024); *Walsh*, 238 Ill. 2d at 631-32.

¶ 16    The Act applies to

"any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

Acts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring

favorable government action, result, or outcome." 735 ILCS 110/15 (West 2024).[3]

¶ 17    A trial court must hold a hearing and rule on the motion under the Act within 90 days after the respondent is given notice. *Id.* § 20(a). Discovery is suspended pending a decision on the motion, though the trial court may permit limited discovery on whether the movant's acts are immunized from liability. *Id.* § 20(b). The trial court must grant the motion and dismiss the claim unless the responding party produces clear and convincing evidence that the moving party's acts are not immunized from, or are not in furtherance of acts immunized from, liability by the Act. *Id.* § 20(c). The Act is to be "construed liberally to effectuate its purposes and intent fully." *Id.* § 30(b).

¶ 18    After *Sandholm*, the appellate court began applying a test for motions under the Act, which we adopted in *Glorioso*. Pursuant to this post-*Sandholm* test, which incorporates the Act's statutory requirements:

"the movant has the burden to show that (1) the movant's acts were in furtherance of his rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action and (2) plaintiff's claims are *solely* based on, related to, or in response to the movant's exercise of these rights. [Citation.] If the movant meets its burden under the first two prongs, in order to defeat the motion, plaintiff must prove by clear and convincing evidence what is considered the third prong of the test: that the movant's acts were not *genuinely* aimed at procuring favorable government action." (Emphases in original.) *Glorioso*, 2024 IL 130137, ¶ 55.

---

[3]The amended version of section 15 states in the first paragraph:

"This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government, including freedom of the press. *The claim does not need to solely pertain to the moving party's constitutional rights as this Act applies regardless of the motives of the person who brought the claim that the moving party is seeking to dispose of.*" (Emphasis added.) Pub. Act 104-431, § 5 (eff. Aug. 21, 2025) (amending 735 ILCS 110/15).

However, as stated, we do not consider the effect of the changes because the amendments apply only to cases filed after January 1, 2026. *Id.* (adding 735 ILCS 110/32).

¶ 19    For the first prong of the test, a defendant must show that his or her acts were in furtherance of his or her rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action. *Id. Glorioso* explained that it "requires a court to consider whether an objective person would find the acts were reasonably calculated to elicit a favorable government action or outcome." *Id.* ¶ 67. The parties agree that the first prong is satisfied here.

¶ 20    The second prong is the main dispute. In *Glorioso*, the parties also disagreed on the proper approach to the second prong, specifically whether it required the defendants to show that the lawsuit was meritless, retaliatory, or both. *Id.* ¶ 56. This topic was the focus of the appellate court dissent in *Glorioso*. *Id.* However, we ultimately resolved the case on the first prong and did not reach the second prong. *Id.* ¶¶ 56, 69.

¶ 21    Thus, we turn to *Sandholm*. There, we observed that "SLAPPs are, by definition, meritless," because the plaintiffs bringing such suits do not intend to win but instead seek to chill a defendant's participation in government and discourage others from opposition through delay, expense, and distraction. *Sandholm*, 2012 IL 111443, ¶ 34. We agreed that, "if the plaintiff's intent in bringing suit is to recover damages for alleged defamation and not to stifle or chill defendants' rights of petition, speech, association, or participation in government, it is not a SLAPP and does not fall under the purview of the Act." *Id.* ¶ 42. We stated that it was "clear that the legislation is aimed at discouraging and eliminating meritless, retaliatory SLAPPs, as they traditionally have been defined" (*id.*), and not "where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants" (*id.* ¶ 45). "In light of the clear legislative intent *** to subject only meritless, retaliatory SLAPP suits to dismissal," we construed the phrase " 'based on, relates to, or is in response to' in section 15 to mean *solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Id.* (quoting 735 ILCS 110/15 (West 2008)). If the plaintiff filed suit "genuinely seeking relief for damages," the lawsuit was not solely based on the defendant's right to participate in government, and the suit would not be subject to dismissal under the Act. *Id.* We concluded, "based on the parties' pleadings," that the plaintiff's lawsuit did not meet this standard because it was "apparent that the true goal of [the] plaintiff's

- 7 -

claims [was] not to interfere with and burden [the] defendants' free speech and petition rights, but to seek damages for the personal harm to his reputation from [the] defendants' alleged defamatory and tortious acts." *Id.* ¶ 57.

¶ 22 *Ryan* cited *Sandholm* in concluding that, to satisfy the second prong of the test, the movant must affirmatively demonstrate that the nonmovant's claim was a SLAPP in that "the claim [was] meritless and was filed in retaliation against the movant's protected activities" to deter the movant from those activities. *Ryan*, 2012 IL App (1st) 120005, ¶ 21. *Ryan* further cited the pre-*Sandholm* case *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 125-26 (2010), which identified two potential factors that may indicate a retaliatory motive: the time between the protected activity and the complaint's filing, and whether the amount of damages sought is disproportionate to the alleged harm. *Ryan*, 2012 IL App (1st) 120005, ¶ 23. The First District subsequently applied *Ryan*'s approach in numerous cases, narrowing it to a second-prong test that examines only whether the suit is meritless and retaliatory and adding that a claim is meritless if the movant can disprove an essential element of the claim. See, *e.g.*, *Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶ 38; *Chadha v. North Park Elementary School Ass'n*, 2018 IL App (1st) 171958, ¶¶ 92-93; *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶¶ 37-40; *Samoylovich v. Montesdeoca*, 2014 IL App (1st) 121545, ¶ 29; *Stein v. Krislov*, 2013 IL App (1st) 113806, ¶ 17; *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶¶ 18-19.

¶ 23 Anderson argues that the appellate court's departure from First District precedent applying the "meritless and retaliatory" standard shifts procedural protections in the movant's favor. According to Anderson, a defendant can always argue that the plaintiff's true motive is retaliation, and the trial court must now make dispositive factual findings on a limited record. He notes that anti-SLAPP statutes in some other states first require a determination that the suit is objectively baseless. Anderson further points out that the appellate court here determined that "meritless" cannot mean lacking in legal merit in part because 10% to 20% of SLAPP cases result in judgments for plaintiffs. See 2025 IL App (4th) 241076, ¶ 42 (citing *Sandholm*, 2012 IL 111443, ¶ 34). He disputes that statistic as overstated based on the underlying studies and argues that, regardless, SLAPPs remain overwhelmingly legally meritless. Anderson also argues that the Act is not redundant of traditional dispositive motions, as it offers the additional protections

- 8 -

of expedited proceedings, a stay of discovery, and an award of attorney fees to the prevailing movant.

¶ 24 Smith responds that both the Act's text and *Sandholm* focus on whether a plaintiff genuinely seeks relief, rather than on whether the claims are legally meritless. She argues that the Act targets lawsuits that chill protected activity and not those that merely lack merit. In her view, nothing in the Act "indicates an intention to regulate the reasonableness of defamation claims generally" but rather to prevent the abuse of judicial process where the plaintiff's purpose is to harass individuals and organizations for participating in public affairs, which is a question only a subjective standard can address. Smith further contends that the appellate court's reference to the disputed statistics was not central to its reasoning and that it simply used the statistics to support two noncontroversial conclusions: that a SLAPP claim is meritless because it does not warrant litigation on the merits and that postponing this determination until after trial would deprive the movant of the benefits that the Act was designed to provide.

¶ 25 We agree with Smith and the appellate court below that *Ryan* and its progeny misinterpreted *Sandholm* as establishing a strict "meritless and retaliatory" test. When using the phrase "meritless, retaliatory SLAPP" lawsuits, we used the terms "meritless" and "retaliatory" as adjectives to describe SLAPPs, rather than as elements that a movant must prove to establish that a lawsuit is a SLAPP. See *Sandholm*, 2012 IL 111443, ¶¶ 44-45. Tellingly, we never stated that a defendant was required to prove that a lawsuit was both meritless and retaliatory, nor did we apply such a test in resolving the issue before us. See *id.* ¶ 57. This is consistent with the Act itself, which contains no such requirements. Anderson acknowledged at oral argument that *Sandholm* did not apply a "meritless and retaliatory" test to resolve the issue of whether the case was a SLAPP. Indeed, the paragraph encompassing our determination that the defendants did not meet their burden under the Act does not use the terms "merit"/"meritless" or "retaliatory" at all. See *id.*

¶ 26 Again, the second prong of the post-*Sandholm* test requires the defendant to show that the plaintiff's claims are solely based on, related to, or in response to the movant's exercise of the rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action. *Glorioso*, 2024 IL 130137,

¶ 55. In *Glorioso*, we described "a defendant's initial burden as the moving party" as requiring the defendant "to show the true goal of the lawsuit is to 'chill participation in government or to stifle political expression,' rather than to seek damages for personal harm from the defendants' tortious acts." *Id.* ¶ 52 (quoting *Sandholm*, 2012 IL 111443, ¶ 57). In applying this standard, the appellate court concluded that *Sandholm* calls for a subjective inquiry into the plaintiff's intent behind litigating (2025 IL App (4th) 241076, ¶ 48), and we agree. In determining whether the standard of the second prong was satisfied in *Sandholm*, we referenced the "plaintiff's intent in bringing suit" (*Sandholm*, 2012 IL 111443, ¶ 42), whether "a plaintiff files suit genuinely seeking relief for damages" (*id.* ¶ 45), and the "true goal" of the plaintiff's claims (*id.* ¶ 57), in addition to stating that, if "a plaintiff's complaint genuinely seeks redress for damages," it "does not constitute a SLAPP" (*id.* ¶ 53). Further, as the appellate court highlighted, we have clearly stated that the genuineness of the defendant's acts under the third prong is assessed by a subjective test (*Glorioso*, 2024 IL 130137, ¶ 67 n.3), and *Sandholm* compared genuineness under the second prong with genuineness under the third prong (*Sandholm*, 2012 IL 111443, ¶ 53), supporting the appropriateness of a similar subjective approach. 2025 IL App (4th) 241076, ¶ 48. "Under the principles of *stare decisis*, we are duty bound to follow the analysis set forth in *Sandholm*" (*Glorioso*, 2024 IL 130137, ¶ 53) for cases filed before the Act's amendments apply.

¶ 27     We part ways with the appellate court on its holding that a factual dispute on any prong of the post-*Sandholm* test requires the trial court to hold an evidentiary hearing and decide the disputed factual issues. 2025 IL App (4th) 241076, ¶ 75. The legislature chose to have claims of immunity under the Act raised in any type of pleading that seeks to dispose of a judicial claim (see 735 ILCS 110/10 (West 2024)), rather than create an entirely new type of motion. *Cf. Walsh*, 238 Ill. 2d at 644 (Freeman, J., specially concurring, joined by Thomas and Burke, JJ.) ("[T]his court should make explicit that the Act operates only in conjunction with normal practice under the Code of Civil Procedure."). In *Sandholm*, we noted that a motion to dismiss under section 2-619(a) admits the legal sufficiency of the plaintiff's claim but asserts defects or defenses outside the pleadings that defeat the claim. *Sandholm*, 2012 IL 111443, ¶ 55. In evaluating such a motion, we construe the pleadings and supporting documents in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts in the plaintiff's complaint and reasonable inferences drawn from those facts. *Id.* We determine whether a genuine

issue of material fact should preclude dismissal or, absent such an issue of fact, whether dismissal is appropriate as a matter of law. *Id.*

¶ 28       We recognize that the Act sets forth a procedure that differs from a typical section 2-619(a)(9) motion. However, an evidentiary hearing is contrary to the Act's suspension of discovery and its 90-day timeframe for a trial court to rule on the motion. See 735 ILCS 110/20 (West 2024). Moreover, *Glorioso*, *Sandholm*, and *Walsh* all stated without qualification that review was *de novo* (*Glorioso*, 2024 IL 130137, ¶ 49; *Sandholm*, 2012 IL 111443, ¶¶ 41, 55; *Walsh*, 238 Ill. 2d at 634), which is inconsistent with a potential evidentiary hearing.

¶ 29       Additionally, if the legislature intended to allow an evidentiary hearing on the motion, it could have so specified, as at least two states have done in their anti-SLAPP statutes. See Ariz. Rev. Stat. Ann. § 12-751(C) (2022) ("In making its determination [on an anti-SLAPP motion to dismiss], the court shall conduct an evidentiary hearing or consider the pleadings and supporting and opposing affidavits stating facts on which the liability, defense or action is based."); Nev. Rev. Stat. § 41.660(3)(d) (2015) (the court may "[c]onsider such evidence, written or oral, by witnesses or affidavits" in ruling on special motion to dismiss pursuant to anti-SLAPP statute). Other states without such statutory language have specifically found that their anti-SLAPP statutes do not authorize a trial court to conduct evidentiary hearings on a motion to dismiss. See, *e.g.*, *Talandar v. Manchester-Murphy*, 2024 VT 86, ¶ 40, 220 Vt. 403, 331 A.3d 1093 (holding that the provision of Vermont's anti-SLAPP statute did not permit the trial court to hold an evidentiary hearing on the motion; the statute specifically contemplated resolution of the motion based on pleadings and affidavits, and reading evidentiary-hearing requirement into the statute would counteract its statutory purpose of imposing tight timeliness on each step in resolution of the motion); *Aguilar v. Eick*, 344 A.3d 263, 286 (Conn. App. Ct. 2025) (holding that anti-SLAPP statute did not authorize trial court to conduct an evidentiary hearing on motion to dismiss and that trial court's reliance on testimony adduced at hearing constituted reversible error).

¶ 30       Rather, the trial court must determine the plaintiff's subjective intent in bringing the suit from the pleadings and other supporting documents, which, as in this case, could include depositions obtained before discovery was suspended. The defendant must show that the plaintiff's subjective intent in bringing the suit is *solely* based

on, related to, or in response to the movant's exercise of the rights to petition, speak, associate, or otherwise participate in government to obtain favorable government action (*Glorioso*, 2024 IL 130137, ¶ 55), *i.e.*, that "the true goal of the lawsuit is to 'chill participation in government or to stifle political expression,' rather than to seek damages for personal harm from the defendants' tortious acts" (*id.* ¶ 52 (quoting *Sandholm*, 2012 IL 111443, ¶ 57)). See *Walsh*, 238 Ill. 2d at 630 (SLAPPs seek to deter people from exercising their political rights or punish them for doing so). We note that in *Sandholm* we concluded that the plaintiff's lawsuit was not solely based on the defendants' participation in government exclusively by examining the parties' pleadings. *Sandholm*, 2012 IL 111443, ¶ 57.

¶ 31    The two factors that the First District has been using to assess whether a lawsuit was retaliatory, namely the timing of the complaint and whether the damages sought are disproportionate to the injury alleged, could play a role in assessing intent in some cases. See Symposium, *"Strategic Lawsuits Against Public Participation" ("SLAPPs"): An Introduction for Bench, Bar and Bystanders*, 12 Bridgeport L. Rev. 937, 950 (1992) (one of the "classic indicators" of a SLAPP is claims for large monetary damages, disproportionate to realistic losses). However, even *Ryan* and *Hytel* recognized that such considerations are case-specific and not to be applied in a blanket fashion. See *Ryan*, 2012 IL App (1st) 120005, ¶ 23; *Hytel*, 405 Ill. App. 3d at 126. Similarly, whether a complaint is meritless, because it is frivolous or an essential element can be disproved, may bear on the plaintiff's intent, but it is not a prerequisite to satisfying the second prong of the test, as earlier appellate court decisions required. A claim that could theoretically succeed on the legal merits may therefore still be dismissed as a SLAPP, but only if the defendant meets the difficult burden of showing that the plaintiff brought the claim solely to deter or punish the defendant for participation in government. If, after reviewing the pleadings and supporting documents, the trial court determines that a material factual dispute remains regarding the plaintiff's intent, the defendant has failed to meet his or her burden, and the trial court must deny the motion to dismiss under the Act with prejudice.

¶ 32    Conversely, if the trial court determines that the defendant has met the second-prong burden, the burden shifts to the plaintiff in the third prong of the test to prove by clear and convincing evidence that the defendant's acts were not genuinely aimed at procuring a favorable government outcome, which is also a subjective

inquiry. *Glorioso*, 2024 IL 130137, ¶ 67 n.3. If, after reviewing the pleadings and supporting documents, the trial court determines that a material factual dispute remains regarding whether the defendant's acts were not seriously aimed at procuring a favorable government outcome, the plaintiff has failed to meet his burden, and the trial court must grant the motion to dismiss under the Act. As with the second prong, however, the appellate court labeled this a factual determination for the trial court to be made following an evidentiary hearing. That approach is incorrect for the same reasons discussed for the second prong. We additionally note that, although the burden is clear and convincing evidence, such a standard does not preclude *de novo* review by a reviewing court. See *Wanless v. Rothballer*, 115 Ill. 2d 158, 168-69 (1986).

¶ 33                                III. CONCLUSION

¶ 34        In sum, for cases filed before January 1, 2026, we agree with the appellate court that the second prong of the post-*Sandholm* test requires determining the plaintiff's subjective intent in bringing the suit, rather than applying the rigid "meritless and retaliatory" standard derived from *Ryan*. However, we disagree with the appellate court that this inquiry can lead to a factfinding evidentiary hearing. Instead, the trial court should base its ruling only on the pleadings and supporting documents.

¶ 35        For the reasons stated, we affirm the judgment of the appellate court as modified, which reversed the trial court's ruling and remanded for further proceedings.

¶ 36        Appellate court judgment affirmed as modified.

¶ 37        Circuit court judgment reversed.

¶ 38        Cause remanded.