# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *August v. Hanlon*, 2012 IL App (2d) 111252

---

| | |
|---|---|
| Appellate Court Caption | CHARLES AUGUST, Plaintiff-Appellant, v. ROBERT T. HANLON, Defendant-Appellee.–CHARLES AUGUST, Plaintiff-Appellee, v. ROBERT T. HANLON, Defendant-Appellant. |
| District & No. | Second District<br>Docket Nos. 2-11-1252, 2-11-1280 cons. |
| Filed<br>Rehearing denied | September 6, 2012<br>October 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Citizen Participation Act, Illinois's version of an anti-SLAPP statute, did not immunize defendant from liability in plaintiff's action for slander and false light invasion of privacy, since plaintiff's complaint was not based solely on defendant's constitutional rights and participation in government and the burden never shifted to plaintiff to show defendant was immune under the Act. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 06-LA-371; the Hon. Michael W. Feetterer, Judge, presiding. |
| Judgment | No. 2-11-1252, Reversed and remanded.<br>No. 2-11-1280, Affirmed. |

| Counsel on Appeal | R. Mark Gummerson, Adrian M. Gosch, and Jamie R. Wombacher, all of Gummerson Rausch Wand Lee Wombacher, LLC, of Woodstock, for Charles August. |
|---|---|
| | Gerald P. Baggott III, of Law Offices of Robert T. Hanlon & Associates, P.C., of Woodstock, for Robert T. Hanlon. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Justices Zenoff and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Charles August, filed in the circuit court of McHenry County a complaint against defendant, Robert Hanlon. As amended, the complaint contained one count of slander *per quod* and one count of false light invasion of privacy. The trial court granted defendant's motion for summary judgment on the basis that the Citizen Participation Act (Act) (735 ILCS 110/1 *et seq.* (West 2010)) provided defendant immunity from the claims alleged by plaintiff. In conjunction with the judgment, the trial court denied defendant's request for attorney fees. Thereafter, each party filed a motion to reconsider and defendant filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). The trial court denied the relief requested by the parties, and they both appealed. In appeal No. 2-11-1252, plaintiff argues that the trial court erred in finding that the Act applies to this case. In appeal No. 2-11-1280, defendant challenges the trial court's denial of attorney fees and sanctions. On our own motion, we consolidated the parties' appeals. For the reasons that follow, we find that the Act does not apply to the facts of this case and that, therefore, defendant's requests for attorney fees and sanctions are moot. Accordingly, the judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings.

¶ 2                      I. BACKGROUND

¶ 3     This case involves the application of the Act, Illinois's version of an anti-SLAPP statute. 735 ILCS 110/1 *et seq.* (West 2010). The term "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 1. SLAPPs are lawsuits aimed at preventing citizens from exercising certain constitutional rights or at punishing those who have done so. *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620, 630 (2010); *Mund v. Brown*, 393 Ill. App. 3d 994, 995 (2009). SLAPPs use the threat of money damages or the prospect of the cost of defending against the suits to "chill" a party's speech or protest activity and discourage opposition by others. *Sandholm*, 2012 IL 111443, ¶ 34 (citing John C. Barker, *Common-Law and Statutory Solutions to the Problem*

-2-

*of SLAPPs*, 26 Loy. L.A. L. Rev. 395, 396 (1993)); *Wright Development Group, LLC*, 238 Ill. 2d at 630; see also 735 ILCS 110/15 (West 2010) (discussing the public policy behind the Act).

¶ 4 The Act, which became effective in August 2007 (Pub. Act 95-506 (eff. Aug. 28, 2007); see 735 ILCS 110/99 (West 2010)), seeks to extinguish SLAPPs and protect citizen participation in government in three principal ways (*Wright Development Group, LLC*, 238 Ill. 2d at 632). First, it immunizes citizens from civil actions "based on, relate[d] to, or *** in response to" any acts made "in furtherance of the [citizens'] constitutional rights to petition, speech, association, and participation in government." 735 ILCS 110/15 (West 2010); *Wright Development Group, LLC*, 238 Ill. 2d at 632. Second, the Act establishes an expedited legal process to dispose of SLAPPs in both the trial court and the appellate court. 735 ILCS 110/5, 20 (West 2010); *Wright Development Group, LLC*, 238 Ill. 2d at 632. Third, the Act mandates that a party who prevails in a motion under the Act shall be awarded "reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25 (West 2010); *Wright Development Group, LLC*, 238 Ill. 2d at 632. We note that the Act has been written more broadly than anti-SLAPP statutes in other states (Mark J. Sobczak, Comment, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U. L. Rev. 559, 573 (2008)) and that the legislature has mandated that the Act be liberally construed (735 ILCS 110/30(b) (West 2010)).

¶ 5 The initial complaint in this case was filed on November 22, 2006. The complaint was amended on November 14, 2007, and September 9, 2008. The second amended complaint alleged as follows. Plaintiff was a business agent and union organizer for Local 150 of the International Union of Operating Engineers. On June 5, 2006, defendant, an attorney licensed to practice law in Illinois, filed in the circuit court of McHenry County a complaint on behalf of Merryman Excavation, Inc. (Merryman), and against multiple parties, including plaintiff. The Merryman lawsuit alleged that plaintiff and another individual (R.W. Smith, Jr.) stole money from Merryman by soliciting a donation for a charitable endeavor through Smith's business, a food and drink establishment named "Jesse Oaks," but keeping the money rather than forwarding it to a charity.

¶ 6 On June 7, 2006, defendant had a telephone conversation with Charles Keeshan, a newspaper reporter. Keeshan informed defendant that he was gathering information for an article to be published in the *Daily Herald* concerning the Merryman lawsuit and that he was seeking defendant's comments about the allegations therein. On June 8, 2006, Keeshan's article was published in the *Daily Herald*. Charles Keeshan, *Businessman Alleges He Was Scammed Out of $10,000*, Daily Herald, June 8, 2006. The article states that Merryman filed suit accusing plaintiff, Smith, and a third individual of defrauding it out of the $10,000 that Merryman thought was going to charity. In the article, defendant is quoted as stating that "[Merryman] opened up [its] checkbook and wrote a big check, only to find out that not only did none of the money go to a disabled kid, but that Jesse Oaks isn't a kid, it's a biker bar." As alleged in the article, defendant also claimed that he "asked for Smith's documentation proving the money was donated but so far his requests have gone unanswered." Also with respect to the request for documentation, defendant is quoted as saying that he and Merryman had "seen nothing like that. This isn't a case of a mere misunderstanding."

¶ 7 According to plaintiff, defendant's statements to Keeshan "were factual comments on a pending lawsuit which was designed to falsely accuse [plaintiff] of defrauding and stealing from defendant's client." Plaintiff alleged that defendant, in the presence of Keeshan, "uttered and published false and defamatory statements about, of and concerning [him]." Plaintiff asserted that a third party reading the *Daily Herald* article in which the statements were published "would reasonably understand the defamatory statements complained of were of and concerning [plaintiff] at the time said statements were made." Plaintiff complained that defendant's statements to Keeshan contained "false allegations" that plaintiff had stolen money from Merryman when plaintiff solicited the charitable donation. According to plaintiff, defendant had received documentation and a letter from Smith's attorney identifying the charities that received Merryman's donation. Plaintiff alleged that defendant "knew or should have known his comments would be further published in the *Daily Herald*, thus extending his utterance and publication beyond the newspaper reporter and to the general public."

¶ 8 Count I of the complaint alleged slander *per quod*. Plaintiff alleged that defendant's false and defamatory statements "maliciously slandered Plaintiff, wrongfully intending to bring Plaintiff into public disgrace and scandal and further wrongfully intending to injure and to destroy the Plaintiff's good name, credit and reputation throughout McHenry County and adjoining counties and to bring him into disrepute among his colleagues and co-workers, and otherwise; and to generally discredit him by falsely and maliciously speaking, uttering and publishing, concerning Plaintiff, said defamatory false and scandalous words." Plaintiff claimed that, as a direct and proximate result of defendant's false and defamatory comments, he was not selected to run for the position of treasurer of Local 150, a position that would have benefitted him with an annual salary increase of between $40,000 and $45,000. Plaintiff also claimed that, as a direct and proximate result of defendant's false and defamatory comments, he was unable to act in his role as a principal fundraiser for a local charity.

¶ 9 Count II of the complaint alleged false light invasion of privacy. Plaintiff alleged that defendant's false and defamatory statements "maliciously slandered [him], wrongfully intending to bring [plaintiff] into public disgrace and scandal and further wrongfully intending to injure and to destroy [plaintiff's] good name, credit and reputation throughout McHenry County and adjoining counties and to bring him into disrepute among his colleagues and co-workers, cause him to be regarded as a person unfit and untrustworthy to discharge the duties of his employment and office, cause him to be regarded as a person having committed criminal acts involving moral turpitude, prejudice him with his colleagues, and co-workers, and otherwise; and to generally discredit him by falsely and maliciously speaking, uttering and publishing concerning [plaintiff], said defamatory false and scandalous words." Plaintiff alleged that defendant's false statements placed him in a false light before the public and were made with actual malice. In support of this claim, plaintiff again cited his claims that he was not selected to run for the position of treasurer of Local 150 and that he was unable to act in his role as a principal fundraiser for a local charity.

¶ 10 On December 2, 2008, defendant filed a motion to strike "designated immaterial matter" and multiple motions for judgment on the pleadings. See 735 ILCS 5/2-615(a), (e) (West 2008). On May 8, 2009, the trial court entered a written order granting in part defendant's

motion to strike but denying all of defendant's motions for judgment on the pleadings. In addition, the court ordered defendant to file an answer to the second-amended complaint. On March 17, 2011, defendant's attorney of record was granted leave to withdraw from representing defendant. Subsequently, defendant filed his *pro se* appearance.

¶ 11 On March 29, 2011, defendant filed a *pro se* motion for summary judgment based upon immunity under the Act (735 ILCS 5/2-1005 (West 2010); 735 ILCS 110/1 *et seq.* (West 2010)). Defendant also filed a memorandum of law in support of his motion for summary judgment, with various attachments, including his own affidavit. Defendant alleged that plaintiff's lawsuit amounted to a SLAPP action in that the claims therein "are not only based on [defendant's] actions as an officer of the court, but according to the complaint are based upon and relate to the actions undertaken by [defendant] on behalf of his clients to petition the government for redress of grievances." In conjunction with his request for summary judgment, defendant requested reimbursement for "costs and attorney fees in bringing this motion." See 735 ILCS 110/25 (West 2010).

¶ 12 On May 16, 2011, plaintiff filed a response to defendant's motion for summary judgment and a memorandum of law in support thereof. Among other things, plaintiff argued in his memorandum that defendant is not entitled to immunity under the Act, because the acts complained of in plaintiff's complaint were not "based upon, relate[d] to, or in response to" any act of defendant in furthering his own constitutional rights. See 735 ILCS 110/15 (West 2010). Instead, plaintiff asserted, his complaint was brought to seek damages for the injuries he sustained as a result of defendant's wrongful conduct. Plaintiff also argued that the Act does not apply to defendant because he was not exercising his own constitutional right to petition but was merely representing Merryman in the exercise of *its* constitutional rights. In addition, plaintiff contended that the Act does not apply retroactively to cases such as this, which were filed prior to its effective date.

¶ 13 On July 28, 2011, the court held a hearing on defendant's motion for summary judgment. After the parties argued their respective positions, the court granted defendant's motion. Initially, the court, relying on *Shoreline Towers Condominium Ass'n v. Gassman*, 404 Ill. App. 3d 1013 (2010), held that the Act is procedural and therefore applies retroactively. Next, the court rejected plaintiff's argument that the Act does not apply to defendant because he was not exercising his own constitutional right to petition but was merely representing Merryman in the exercise of its constitutional rights. The court noted that the Act defines the word "person" to include "two or more persons who have a joint or common interest." See 735 ILCS 110/10 (West 2010). However, unable to find any case law from Illinois addressing whether the Act protects the statements and actions of an attorney made in the course of his or her representation of a client, the court looked to case law from California. See, *e.g.*, *Taheri Law Group v. Evans*, 72 Cal. Rptr. 3d 84 (Cal. Ct. App. 2008). The court interpreted the case law from California as "consistently h[olding] that the California anti-SLAPP immunity can apply to the actions of extrajudicial statements of attorneys made during the scope of their representation." This body of case law from California, combined with the Act's definition of "person" and the Act's requirement that it be liberally construed (see 735 ILCS 110/30(b) (West 2010)), persuaded the court that the Act "can apply to and afford immunity to attorneys who petition the government on behalf of their clients."

¶ 14    The court then reviewed plaintiff's second amended complaint and determined that it is "based upon the actions of Defendant." The court determined that defendant's act of filing a lawsuit against plaintiff on Merryman's behalf constituted "conduct genuinely aimed at procuring favorable government action, result or outcome." The court also determined that defendant's comments to Keeshan, which referenced the Merryman lawsuit, are covered under the Act. The court further found that "there was nothing else to really look at or present to me on behalf of the Plaintiff that clearly establishes that the Defendant's comments were not covered by the [Act]." The court denied defendant's request for attorney fees given that defendant represented himself in the case.

¶ 15    On August 26, 2011, plaintiff filed a motion to reconsider the trial court's grant of summary judgment in defendant's favor. On August 29, 2011, defendant filed a motion to reconsider the trial court's denial of his request for attorney fees. That same day, defendant also filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). In the latter motion, defendant urged the trial court to sanction plaintiff and his attorney "for advancing this case without any factual basis for its claims in support of the allegations contained in [plaintiff's] complaint." Defendant requested sanctions "in an amount equal to the total amount of attorneys fees and costs incurred by [defendant] in defense of this action." On November 1, 2011, the trial court denied defendant's motion to reconsider, but continued the matter until November 8, 2011, for ruling on plaintiff's motion to reconsider and defendant's motion for sanctions. On November 8, 2011, the trial court denied both plaintiff's motion to reconsider and defendant's motion for sanctions. Plaintiff filed a notice of appeal on December 7, 2011, and defendant filed a notice of appeal on December 8, 2011.

¶ 16                                    II. ANALYSIS

¶ 17    In appeal No. 2-11-1252, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment. Plaintiff raises three contentions in support of his argument. Relying on the supreme court's recent decision in *Sandholm*, 2012 IL 111443, plaintiff first contends that the Act does not apply to the facts of this case. Second, plaintiff contends that defendant does not fall within the Act's definition of "person," because he was not exercising his own constitutional right to petition but was merely representing a client in the exercise of its constitutional rights. Finally, plaintiff asserts that the trial court erred in looking to California law in determining that defendant was a "person" as defined under the Act. In appeal No. 2-11-1280, defendant challenges the trial court's denials of his request for attorney fees under the Act and his motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994).

¶ 18    Prior to addressing the merits of the issues raised on appeal, we review the pertinent portions of the Act to place the parties' arguments in context. As noted above, the Act became effective in August 2007.[1] 735 ILCS 110/99 (West 2010). Section 5 of the Act (735

---

[1]Before this court, plaintiff does not expressly renew his argument that the Act does not apply retroactively. Indeed, as the trial court noted, the only published opinion that has addressed

ILCS 110/5 (West 2010)), which sets forth the public policy considerations underlying the statute, provides:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence. The information, reports, opinions, claims, arguments, and other expressions provided by citizens are vital to effective law enforcement, the operation of government, the making of public policy and decisions, and the continuation of representative democracy. The laws, courts, and other agencies of this State must provide the utmost protection for free exercise of these rights of petition, speech, association, and government participation.

Civil actions for money damages have been filed against citizens and organizations of this State as a result of their valid exercise of their constitutional rights to petition, speak freely, associate freely, and otherwise participate in and communicate with government. There has been a disturbing increase in lawsuits termed 'Strategic Lawsuits Against Public Participation' in government or 'SLAPPs' as they are popularly called.

The threat of SLAPPs significantly chills and diminishes citizen participation in government, voluntary public service, and the exercise of these important constitutional rights. This abuse of the judicial process can and has been used as a means of intimidating, harassing, or punishing citizens and organizations for involving themselves in public affairs.

It is in the public interest and it is the purpose of this Act to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government; to protect and encourage public participation in government to the maximum extent permitted by law; to establish an efficient process for identification and adjudication of SLAPPs; and to provide for attorney's fees and costs to prevailing movants."

¶ 19 Section 15 of the Act provides:

"This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

Acts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." 735 ILCS 110/15 (West 2010).

¶ 20 Section 10 of the Act defines certain terms used in the Act. For instance, a "claim" is

---

the retroactivity issue held that the Act is procedural and therefore applies retroactively. *Shoreline Towers Condominium Ass'n*, 404 Ill. App. 3d at 1022-23.

defined to include "any lawsuit, cause of action, claim, cross-claim, counterclaim, or other judicial pleading or filing alleging injury." 735 ILCS 110/10 (West 2010). "Government" is defined as "a branch, department, agency, instrumentality, official, employee, agent, or other person acting under color of law of the United States, a state, a subdivision of a state, or another public authority including the electorate." 735 ILCS 110/10 (West 2010). A "person" under the Act includes "any individual, corporation, association, organization, partnership, 2 or more persons having a joint or common interest, or other legal entity." 735 ILCS 110/10 (West 2010).

¶ 21 Section 20 of the Act sets forth the expedited legal process applicable to alleged SLAPPs. Under that provision, when a motion is filed pursuant to the Act, "a hearing and decision on the motion must occur within 90 days after notice of the motion is given to respondent."[2] 735 ILCS 110/20(a) (West 2010). The Act requires the appellate court to "expedite any appeal or other writ, whether interlocutory or not, from a trial court order denying that motion or from a trial court's failure to rule on that motion within 90 days." 735 ILCS 110/20(a) (West 2010). Although discovery is suspended pending a decision on the motion, "discovery may be taken, upon leave of court for good cause shown, on the issue of whether the movants acts are not immunized from, or are not in furtherance of acts immunized from, liability by [the] Act." 735 ILCS 110/20(b) (West 2010). The trial court is required to grant the motion and dismiss the claim "unless the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by [the] Act." 735 ILCS 110/20(c) (West 2010). Section 25 of the Act provides that the court "shall award a moving party who prevails in a motion under [the] Act reasonable attorney's fees and costs incurred in connection with the motion." 735 ILCS 110/25 (West 2010). Furthermore, as noted above, the legislature expressly provided that the Act "shall be construed liberally to effectuate its purposes and intent fully." 735 ILCS 110/30(b) (West 2010). With these principles in mind, we turn first to plaintiff's appeal.

¶ 22 A. Appeal No. 2-11-1252

¶ 23 Plaintiff contends that the trial court erred in granting defendant's motion for summary judgment based on the immunity provided by the Act. Initially, plaintiff suggests that we should review the trial court's ruling on defendant's motion for summary judgment as a dismissal pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2010)). We disagree. The Act applies to "*any* motion to dispose of a claim in a judicial proceeding." (Emphasis added.) 735 ILCS 110/15 (West 2010). Further, for the purposes of the Act, a "motion" is defined as "any motion to dismiss, *for summary judgment*, or to strike, or any other judicial pleading filed to dispose of a judicial claim." (Emphasis added.) 735 ILCS 110/10 (West 2010). In this case, defendant sought to dispose of plaintiff's claim by filing a motion for summary judgment, and the Act expressly permitted him to do so. See *Wright Development Group, LLC*, 238 Ill. 2d at 642 (Freeman,

---

[2]In the present case, defendant waived the 90-day decision period.

J., specially concurring, joined by Thomas and Burke, JJ.) (suggesting that movants asserting immunity under the Act must do so pursuant to the normal means provided under the Code as section 10 expressly directs).[3]

¶ 24 In any event, for purposes of our analysis, any distinction between a motion for summary judgment and a motion to dismiss under section 2-619(a)(9) is immaterial. Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Myers v. Levy*, 348 Ill. App. 3d 906, 913 (2004). Similarly, in reviewing a motion to dismiss under section 2-619(a)(9), the relevant inquiry is " 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Sandholm*, 2012 IL 111443, ¶ 55 (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)); see also *International Profit Associates, Inc. v. Linus Alarm Corp.*, 2012 IL App (2d) 110958, ¶ 9 (noting that a section 2-619 dismissal resembles the grant of a motion for summary judgment). The interpretation and application of the Act presents an issue of law, subject to *de novo* review. *Wright Development Group, LLC*, 238 Ill. 2d at 634; *Hammons v. Society of Permanent Cosmetic Professionals*, 2012 IL App (1st) 102644, ¶ 13. Likewise, we review *de novo* a grant of summary judgment. *Colburn v. Mario Tricoci Hair Salon & Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 32.

¶ 25 Turning to the merits, plaintiff first argues that the supreme court's recent decision in *Sandholm*, 2012 IL 111443, which interpreted section 15 of the Act, precludes defendant from obtaining relief under the Act. In *Sandholm*, the plaintiff was employed as a basketball coach and athletic director at a public high school. Although the plaintiff received positive evaluations of his job performance during his entire tenure, the defendants began a campaign to remove him as basketball coach and athletic director due to their disagreement with his coaching style. The plaintiff filed a complaint against the defendants, alleging that they made multiple false and defamatory statements in various media as part of their campaign to

_____

[3]We recognize that the supreme court has stated that a "motion to dismiss based on the immunity conferred by the Act *** is more appropriately raised in a section 2-619(a)(9) motion." *Sandholm*, 2012 IL 111443, ¶ 54. However, in so holding, the *Sandholm* court was not dealing with a motion for summary judgment. Instead, the *Sandholm* court made this remark in the context of distinguishing between a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) and a motion to dismiss under section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)). The court explained that a motion pursuant to section 2-615 challenges only the legal sufficiency of a complaint and alleges only defects on the face of the complaint. *Sandholm*, 2012 IL 111443, ¶ 54. In contrast, a motion to dismiss under section 2-619(a)(9) of the Code admits the legal sufficiency of the plaintiff's complaint (*Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 15), but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim (*Sandholm*, 2012 IL 111443, ¶ 54). The court reasoned that a *motion to dismiss* filed in accordance with the Act is more properly categorized as a section 2-619(a)(9) motion because the immunity the Act provides is an affirmative matter avoiding the legal effect of or defeating the claim. *Sandholm*, 2012 IL 111443, ¶ 54.

remove him. The plaintiff's complaint consisted of multiple counts of defamation *per se*, false light invasion of privacy, civil conspiracy to interfere with prospective business advantage, and slander *per se*. The defendants moved to dismiss the plaintiff's complaint on the basis that the Act provided them with immunity. The trial court granted the defendants' motion, and this court affirmed. See *Sandholm v. Kuecker*, 405 Ill. App. 3d 835 (2010). The supreme court allowed the plaintiff's petition for leave to appeal.

¶ 26 The supreme court determined that the legislature intended the Act "to target only meritless, retaliatory SLAPPs and did not intend to establish a new absolute or qualified privilege for defamation." *Sandholm*, 2012 IL 111443, ¶ 50. The court stated that, if it was the intent of the legislature to create such a privilege, it would have explicitly stated so. *Sandholm*, 2012 IL 111443, ¶ 50. In accordance with this determination, and invoking the rules of statutory construction, the supreme court interpreted the phrase " 'based on, relates to, or is in response to' " in section 15 of the Act to mean "*solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.' " (Emphasis in original.) *Sandholm*, 2012 IL 111443, ¶ 45 (quoting 735 ILCS 110/15 (West 2008)). The court expounded, "[s]tated another way, where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendant's rights of petition, speech, association, or participation in government. In that case, the suit would not be subject to dismissal under the Act." *Sandholm*, 2012 IL 111443, ¶ 45.

¶ 27 The court explained that its interpretation of the Act "allows a court to identify meritless SLAPP suits subject to the Act" and serves "to ameliorate the 'particular danger inherent in anti-SLAPP statutes *** that when constructed or construed too broadly in protecting the rights of defendants, they may impose a counteractive chilling effect on prospective plaintiffs' own rights to seek redress from the courts for injuries suffered.' " *Sandholm*, 2012 IL 111443, ¶ 48 (quoting Mark J. Sobczak, Comment, *SLAPPed in Illinois: The Scope and Applicability of the Illinois Citizen Participation Act*, 28 N. Ill. U. L. Rev. 559, 575 (2008)). The court further explained that "construing the Act to apply only to meritless SLAPPs accords with another express goal in section 5 [of the Act]: 'to strike a balance between the rights of persons to file lawsuits for injury and the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government.' [Citation.]" *Sandholm*, 2012 IL 111443, ¶ 49.

¶ 28 Applying the foregoing, the supreme court noted that under the Act the defendants had the initial burden of proving that the plaintiff's lawsuit was solely based on, related to, or in response to the defendants' acts in furtherance of their rights of petition, speech, or association, or to participate in government. *Sandholm*, 2012 IL 111443, ¶ 56. If the defendants met their burden, then, and only then, would the burden shift to the plaintiff to provide clear and convincing evidence that the defendants' acts were not immunized from liability under the Act. *Sandholm*, 2012 IL 111443, ¶ 56. After examining the parties' pleadings, the supreme court concluded that the plaintiff's lawsuit was not solely based on, related to, or in response to the acts of the defendants in furtherance of their rights of petition and speech. *Sandholm*, 2012 IL 111443, ¶ 57. The court determined that the "true goal" of

the plaintiff's lawsuit was not to chill participation in government or stifle political expression, but to seek damages for the personal harm to his reputation from the defendants' alleged defamatory and tortious acts. *Sandholm*, 2012 IL 111443, ¶ 57.

¶ 29        *Sandholm* was decided on January 20, 2012, while this case was pending appeal. We note that, as a general rule, a decision of our supreme court applies retroactively to causes pending at the time it is announced, including cases on direct review in the appellate court. *Miller v. Gupta*, 174 Ill. 2d 120, 128 (1996). According to plaintiff, application of *Sandholm* to this case demonstrates that the trial court erred in granting summary judgment to defendant under the Act. We agree.

¶ 30        Pursuant to the procedure set forth in *Sandholm*, defendant had the initial burden of proving that plaintiff's lawsuit was *solely* based on, related to, or in response to defendant's acts in furtherance of his rights of petition, speech, or association, or to participate in government. Viewing the pleadings, affidavits, depositions, and admissions on file in the light most favorable to plaintiff, we find that defendant has failed to meet this burden. Instead, we find that plaintiff's objective in filing suit was not solely to interfere with and burden defendant's right to petition, but to seek damages for the personal harm to his reputation resulting from defendant's allegedly false and defamatory statements. We note for instance that, in count I of plaintiff's complaint, which alleged slander *per quod*, plaintiff alleged that the comments defendant made to Keeshan "maliciously slandered Plaintiff, wrongfully intending to bring Plaintiff into public disgrace and scandal and further wrongfully intending to injure and to destroy the Plaintiff's good name, credit and reputation throughout McHenry County and adjoining counties and to bring him into disrepute among his colleagues and co-workers, and otherwise." Moreover, plaintiff alleged that, as a direct and proximate result of defendant's false and defamatory statements, he was not selected to run for treasurer of Local 150. Plaintiff claimed that holding the position of treasurer would have benefited plaintiff with $40,000 to $45,000 per year in additional income. Plaintiff further alleged that, as a direct and proximate result of defendant's false and defamatory statements, he was unable to act in his role as a principal fundraiser for a local charity.

¶ 31        Similarly, in count II of the complaint, which alleged false light invasion of privacy, plaintiff alleged that defendant "maliciously slandered [him], wrongfully intending to bring [plaintiff] into public disgrace and scandal and further wrongfully intending to injure and to destroy [plaintiff's] good name, credit and reputation throughout McHenry County and adjoining counties and to bring him into disrepute among his colleagues and co-workers, cause him to be regarded as a person unfit and untrustworthy to discharge the duties of his employment and office, cause him to be regarded as a person having committed criminal acts involving moral turpitude, prejudice him with his colleagues, and co-workers, and otherwise; and to generally discredit him by falsely and maliciously speaking, uttering and publishing, concerning [plaintiff], said defamatory false and scandalous words." Plaintiff supported these allegations with the same examples provided with respect to count I. In other words, the allegations in plaintiff's complaint, which were supported by concrete examples, were at least, in part, undertaken to protect plaintiff's reputation and goodwill in the community. In this regard, we also note that, despite the fact that defendant filed multiple section 2-615 motions to dispose of plaintiff's complaint, the trial court found that the allegations in

plaintiff's complaint were sufficient to survive all of those motions and the court ordered defendant to answer the complaint. Thus, the trial court believed that defendant had pleaded sufficient facts for his complaint to go forward. We therefore conclude that defendant has failed to prove that plaintiff's complaint was *solely* based on defendant's exercise of his constitutional rights of petition, speech, association, or to participate in government. Thus, the burden never shifted to plaintiff to provide clear and convincing evidence that defendant's acts are not immune from liability under the Act. Accordingly, we find that the trial court erred in granting defendant summary judgment.

¶ 32 Defendant nevertheless insists that he made the threshold showing that plaintiff's lawsuit was based on, related to, or in response to his petitioning activities alone. In his appellee's brief, this argument is not clearly articulated and is largely undeveloped. As a result, we would be warranted in finding this argument forfeited. See Ill. S. Ct. R. 341(h)(7), (i) (eff. July 1, 2008); *Sobczak v. General Motors Corp.*, 373 Ill. App. 3d 910, 924 (2007). Defendant attempted to clarify this position during oral argument. In particular, defendant claimed that allegations in plaintiff's complaint regarding his failure to be selected to run for treasurer of Local 150 were not true. In support of this claim, defendant relied principally on two documents: the affidavit attached to the memorandum in support of his motion for summary judgment and a document from the general counsel for Local 150. We find defendant's position unpersuasive.

¶ 33 In his complaint, plaintiff alleged that, "[a]s was customary, every candidate selected to run on the slate of President Bill Dugan was elected to their respective positions in the 2007 Local 150 elections." Plaintiff further alleged that the individual who was ultimately selected to replace plaintiff and run on Dugan's slate of candidates for the treasurer position was, in fact, elected as treasurer. Initially, we note that the significance of the document from the general counsel is not apparent to us. Although it references another individual serving as the treasurer of Local 150, we do not read it as establishing, as defendant claims, that plaintiff was never slated to run for treasurer, and defendant does not explain how this document supports his claim. As far as the affidavit is concerned, defendant merely asserted that two of the candidates running on the slate of the candidate challenging Dugan for president of Local 150 were actually elected. However, there was no assertion that either of these candidates won the race for treasurer or that the individual who allegedly replaced plaintiff as the candidate for treasurer on Dugan's slate was not elected as treasurer. Therefore, we find this evidence insufficient to shift the burden to plaintiff.

¶ 34 Alternatively, defendant urges us to uphold summary judgment on the basis of either the attorney-litigation privilege or the fair-reporting privilege. Initially, we find that these arguments have been forfeited because defendant did not raise them in the trial court. *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010). Defendant insists that he raised the attorney-litigation privilege "within the motion to dismiss before the court below." However, defendant filed multiple motions to dismiss and, in contravention of the rules of our supreme court, defendant does not reference the page of the record where he raised the attorney-litigation privilege in the trial court. See Ill. S. Ct. R. 341(h)(7), (i) (eff. July 1, 2008) (providing that the appellee's argument shall contain his or her contentions and the reasons therefor, "with citation of the authorities *and the pages of the record relied on*" (emphasis

added)). Defendant's failure to comply with Rule 341 provides a separate basis for finding forfeiture. See *People v. Johnson*, 192 Ill. 2d 202, 206 (2000). In any event, our independent review of the record indicates that defendant raised the attorney-litigation privilege only in response to plaintiff's *first* amended complaint. He did not raise it with respect to the *second* amended complaint, which is presently before us.

¶ 35    Forfeiture notwithstanding, we briefly address why neither privilege is applicable here. Illinois courts have invoked the attorney-litigation privilege as set forth in section 586 of the Restatement (Second) of Torts. See, *e.g.*, *Atkinson v. Affronti*, 369 Ill. App. 3d 828, 831-36 (2006); *Thompson v. Frank*, 313 Ill. App. 3d 661, 664-65 (2000). That provision states as follows:

> "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." Restatement (Second) of Torts § 586 (1977).

The privilege, which is absolute, is based upon "a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." Restatement (Second) of Torts § 586 cmt. a (1977). Because the privilege provides complete immunity, its scope is necessarily narrow. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 165 (2003). Thus, the privilege is available only when the publication: (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law. *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 702 (2000).

¶ 36    In this case, the allegedly defamatory statements were made outside of the judicial proceeding to a newspaper reporter who was not connected to the lawsuit. While the attorney-litigation privilege has been extended to out-of-court communications between opposing counsel, to out-of-court communications between attorney and client related to pending litigation, to out-of-court communications between attorneys representing different parties suing the same entities, to statements made during quasi-judicial proceedings, to communications necessarily preliminary to quasi-judicial proceedings, and to posttrial remarks related to judical proceedings made by an attorney to his or her client (see *Golden v. Mullen*, 295 Ill. App. 3d 865, 870-71 (1997) (and cases cited therein)), defendant does not cite any authority that this privilege applies to extrajudicial statements made by an attorney to a third party with no connection to the litigation. In fact, the only case defendant cites as "instructive," *Cummins v. Heaney*, No. 05 C 3396, 2005 WL 2171066 (N.D. Ill. Aug. 31, 2005), is readily distinguishable. Significantly, *Cummins* did not involve an attorney's statements to the media. Rather, it involved an out-of-court chain of e-mails between attorneys representing opposing parties pertaining to litigation scheduling. Thus, *Cummins* is of no import here.

¶ 37    More important, our research reveals that Illinois courts have expressly declined to extend the attorney-litigation privilege to third parties not connected with the litigation (see

*Kurczaba*, 318 Ill. App. 3d at 705 ("Illinois clearly limits the attorney litigation privilege and has refused to extend it to third-party communications unrelated to a lawsuit."); *Thompson*, 313 Ill. App. 3d at 664 (holding that attorney-litigation privilege does not apply to out-of-court communication between an attorney and an opposing party's spouse); *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 166 (1998) (noting that statements made to the media concerning a case are not part of the judicial proceeding and therefore are not privileged (citing Prosser and Keeton on Torts § 114, at 819-20 (W. Page Keeton *et al.* eds. 5th ed. 1984))); *Golden*, 295 Ill. App. 3d at 872 (declining to extend attorney-litigation privilege to out-of-court communication between attorney and former client's spouse)). Defendant does not provide a cogent reason for departing from this authority, and he does not explain how doing so would further the privilege's public policy goal. For these reasons, we conclude that the attorney-litigation privilege is not applicable to the allegedly defamatory statements made by defendant in this case.

¶ 38    Likewise, we conclude that the fair-reporting privilege has no application to this case. The fair-reporting privilege is set forth in section 611 of the Restatement (Second) of Torts as follows:

"The publication of defamatory matter concerning another in a report of an official action or official proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgment of the occurrence reported." Restatement (Second) of Torts § 611 (1977).

This section was adopted by the Illinois Supreme Court in *Catalano v. Pechous*, 83 Ill. 2d 146, 167-68 (1980). "The basis of this privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings." Restatement (Second) of Torts § 611 cmt. a (1977). Although the privilege is commonly exercised by newspapers, broadcasting outlets, and others in the business of reporting news to the public, it is not limited to the media. *Kurczaba*, 318 Ill. App. 3d at 707; Restatement (Second) of Torts § 611 cmt. c (1977). In this case, defendant merely asserts that "the *Daily Herald*'s accurate reporting of the claims made in the judicial record are [*sic*] privileged because of the public's interest in having information made available to it as to what occurs in judicial proceedings." (Emphasis added.) While the fair-reporting privilege might arguably apply to the newspaper that published the article upon which plaintiff's complaint is based, defendant fails to explain how the fair-reporting privilege extends to *him*. Accordingly, even absent forfeiture, we would reject this argument.

¶ 39    As a result of our findings, we do not address the other arguments for reversal raised by plaintiff. In addition, we express no opinion on the actual merits of plaintiff's causes of action. We simply hold that plaintiff's lawsuit is not a SLAPP within the meaning of the Act and, thus, is not subject to summary judgment.

¶ 40                          B. Appeal No. 2-11-1280

¶ 41    In appeal No. 2-11-1280, defendant insists that the trial court erred in denying reasonable attorney fees under the Act in connection with its grant of summary judgment in his favor. Defendant also challenges the trial court's decision to deny sanctions pursuant to Illinois

Supreme Court Rule 137 (eff. Feb. 1, 1994). Plaintiff responds that we lack jurisdiction "to hear the appeal in regard to [defendant's] request for awarding attorney's fees," because defendant failed to file his notice of appeal within the appropriate time frame. Plaintiff further argues that, in any event, defendant is prohibited from recovering attorney fees under Illinois law and that the trial court properly denied defendant's request for sanctions pursuant to Rule 137. We find that we have jurisdiction over defendant's appeal. However, given our decision to reverse the trial court's grant of summary judgment pursuant to the Act, we find that the issue of the propriety of an award of attorney fees and sanctions is moot.

¶ 42    Plaintiff insists that defendant's appeal is untimely because the trial court denied his motion to reconsider the ruling on the attorney fee issue on November 1, 2011, but defendant did not file his notice of appeal until December 8, 2011, more than 30 days later. We disagree. Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008) provides in relevant part that a notice of appeal "must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, *or, if a timely posttrial motion directed against the judgment is filed *** within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order*, irrespective of whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions." (Emphasis added.) In this case, we note the following sequence of events. On July 28, 2011, the trial court granted defendant's motion for summary judgment and denied defendant's request for attorney fees under the Act. On August 26, 2011, plaintiff filed a timely motion to reconsider the trial court's grant of summary judgment in defendant's favor. On August 29, 2011, defendant filed a timely motion to reconsider the trial court's denial of attorney fees under the Act.[4] That same day, defendant filed his motion for sanctions. On November 1, 2011, the trial court denied defendant's motion to reconsider. On November 8, 2011, the trial court denied plaintiff's motion to reconsider and defendant's motion for sanctions. On December 8, 2011, defendant filed his notice of appeal. We find that defendant's notice of appeal was timely because it was filed within 30 days after the entry of the order disposing of plaintiff's motion to reconsider (and defendant's motion for sanctions), which was the last pending postjudgment motion directed against the July 28, 2011, order. Nevertheless, because we are reversing the judgment of the trial court granting defendant's motion for summary judgment under the Act, defendant's claim that the trial court erred in denying his request for attorney fees is moot. *Sandholm*, 2012 IL 111443, ¶ 63.

¶ 43    Defendant further claims that the trial court abused its discretion in denying his request for sanctions pursuant to Rule 137. Defendant reasons that "[s]ince the Legislature defined

_____

[4]A postjudgment motion must be filed within 30 days after the trial court's ruling. 735 ILCS 5/2-1203 (West 2010). Although August 29, 2011, was more than 30 days after the trial court's ruling, defendant's motion to reconsider was timely because the thirtieth day fell on a weekend. See 5 ILCS 70/1.11 (West 2010) ("The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded.").

a SLAPP as an abuse of the judicial process, and the court [found] the subject action was in fact a SLAPP, the decision not to sanction [plaintiff's attorney] and the Plaintiff/Appellee demonstrates the denial was an abuse of discretion and sanctions are warranted." However, we have reversed the trial court's grant of summary judgment under the Act. Thus, we find defendant's argument for sanctions moot as well.

¶ 44                                  III. CONCLUSION

¶ 45        Accordingly, for the reasons set forth above, we reverse the circuit court of McHenry County's grant of defendant's motion for summary judgment pursuant to the Act. We affirm the denials of defendant's request for attorney fees and Rule 137 sanctions. This cause is remanded for further proceedings.

¶ 46        No. 2-11-1252, Reversed and remanded.

¶ 47        No. 2-11-1280, Affirmed.