IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2022 Session

FILED

NOV 2 2 2022

Clerk of the Appellate Courts
Rec'd by _RGDoyal_

**RANDOLYN LAFERNEY v. KIM LIVESAY ET AL.**

**Appeal from the Circuit Court for Washington County**
**No. 39969      James E. Lauderback, Judge**

_____

**No. E2021-00812-COA-R3-CV**

_____

Plaintiff Randolyn Laferney filed a tort action against several defendants, alleging causes of action for, *inter alia*, libel, civil conspiracy, and malicious prosecution. The allegations arose primarily out of social media comments and posts made by the defendants regarding Ms. Laferney. On December 10, 2020, the trial court dismissed the legal action as to some, but not all, of the defendants pursuant to Tennessee's anti-SLAPP statute, the Tennessee Public Participation Act ("the TPPA" or "the Act"). Several months later, after the trial court awarded the dismissed defendants their attorney's fees, Ms. Laferney appealed to this Court. Because we conclude that the notice of appeal was untimely pursuant to the TPPA, the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Brad A. Fraser and Ethan D. Lavelle, Knoxville, Tennessee, for the appellant, Randolyn Laferney.

Grace E. Studer, Johnson City, Tennessee, T. Dillon Parker, Morristown, Tennessee, and D. Scott Hurley and Ryan N. Shamblin, Knoxville, Tennessee, for the appellees, Janet McDaniel Keener, Kim Livesay, Lourienne Long, Paezha Marae McCartt.

Rebecca Adelman, Memphis, Tennessee, for the appellees, Tammy Davis and Nicole Stuwa.

**OPINION**

## BACKGROUND

This is a TPPA case arising from statements made online regarding Ms. Laferney (hereinafter, "Appellant") and her dog training/boarding business, Off Leash K9 Training, LLC ("Off Leash"). In early May of 2019, a dog named Dallas died while under the care of Appellant's employee who was supposed to be training the dog. A necropsy revealed that the dog essentially starved to death.[1] Defendants Tammy Davis and Nicole Stuwa, employees of Washington County Animal Control, investigated the dog's death. Defendant Stuwa later swore out a warrant regarding Appellant and her employee, and both were charged with aggravated animal cruelty in the General Sessions Court for Washington County. This story was covered by the local news.

Aside from Defendants Davis, Stuwa, and Washington County, the remainder of the defendants were involved in this case because of social media posts and comments about Appellant. Defendants Livesay, McCartt, West, Bryant, Keener, Carley, Long, and Lejeune all discussed Appellant, her dog training business, and/or the animal cruelty charges on social media, particularly Facebook. Some of the defendants posted news articles about the criminal charges. For example, Defendant Livesay posted,[2] in part, the following on her Facebook page:

> [UPDATE] on the dog DEATH at Off Leash K9 training in Johnson City. The following information was obtained through CREDIBLE sources whose involvement in the situation will not be discussed. Also, if this were not factual, would have never even made the post yesterday. . .
> It is being reported by the trainer and the owner of the franchise that this dog died in a tragic accident when his head was caught in a wire crate yesterday morning. This scenario is 100% INCOMPATIBLE with the facts.
>
> This dog lost 2/3rds of his body weight while in their care.
>
> This dog had sores on his body.
>
> This dog had no scratches, cuts or bruising to his head or neck.
>
> This dog's body had been frozen and thawed.
>
> Is it any wonder the owner of this franchise offered to immediately have this dog's body cremated at her expense???

---

[1] The record contains photographs of the dog's emaciated body that were first published by local news. One article provides that Dallas weighed 31 pounds when left with Off Leash, but weighed only 16 pounds by the time of the necropsy.

[2] As is discussed at length *infra*, it is unclear from the face of these social media posts the exact date and time on which they were made.

Also, I was contacted by the manager of another facility within this owner's franchise holdings. I was asked to take my post down or to, at the very least, amend my post from yesterday so that no other trainers will lose their livelihood. I refused[.]

Defendant Livesay posted several local news articles covering the story on her Facebook page. Defendant Livesay also made a separate post claiming that Appellant previously owned another dog training facility in Florida and that the incident with Dallas was not "an isolated incident." Defendant Bryant responded to that post with the following comment:

> [Appellant] has been burning bridges in the rescue community for at least 5 years. The rescue she was associated with prior to starting with OLK9 completely distanced themselves from her. And there have been at least two reported cases of neglect under her FL franchise. No telling how many people she has paid off/settled with outside of the public eye. To[o] little, to[o] late!

The posts continued in this regard. At one point, Defendant Carley gave Appellant's Knoxville business, Duck Donuts, a poor Yelp! review, noting that Appellant was the owner of Duck Donuts and had been charged with aggravated animal cruelty. Defendant West left a review for the dog training business noting that a dog had recently died while in the business's care, and Defendant Keener started a petition regarding Appellant. The petition was published on May 9, 2019, and was addressed to the "Prosecuting Attorney." Titled "#JusticeForDallas – Puppy starved to death at training facility[,]" the petition contained the following description:

> Dallas, an 8-month old miniature bull terrier, had been taken to Off Leash K9 Training LLC, Johnson City, TN on March 18 for the two-week training period. On May 2, Dallas' family received a text message from Randi LaFerney, owner of Off Leash, asking the dogs owners to call them. At that point, the owners were notified the dog had passed away overnight. LaFerney and Andrew Hunigan, a trainer at the facility, are both charged with aggravated cruelty to animals, a felony in Tennessee. We, the undersigned, request that the defendants be prosecuted and sentenced to the fullest extent of the law, if they are found guilty. This appears to be flagrant neglect/abuse that resulted in Dallas's death by starvation. We are sick of seeing our pets abused, abandoned, neglected and tortured. We want to start by showing the rest of the country that we are not heartless, and we care for these sentient beings. We also call for regular inspections of all facilities that board to train, or day care facilities. Our legislators need to take responsibilities for the lax and superficial animal welfare laws in this state.
> #JusticeforDallas

- 3 -

The social media buzz surrounding the criminal case against Appellant continued in this manner.

On June 5, 2020, Appellant sued all of the aforementioned defendants, as well as Defendants Davis, Stuwa, and Washington County, in the Washington County Circuit Court (the "trial court"). Appellant alleged causes of action for false light invasion of privacy, malicious prosecution, intentional interference with business relations, libel, and civil conspiracy against Defendants Livesay, McCartt, West, Bryant, and Keener. Appellant alleged malicious prosecution against Defendants Stuwa and Davis, and alleged intentional interference with business relations and civil conspiracy against Defendant Davis. Appellant also sued Washington County for negligent hiring, supervision, and training of Defendant Stuwa, the animal control employee who swore out the warrant for Appellant's criminal charges. Finally, against Defendants Carley, Long, and Lejeune, Appellant raised claims for false light invasion of privacy, intentional interference with business relations, libel, and civil conspiracy.

Attached to the complaint were several exhibits reflecting the online activity complained of by Appellant. Generally, Appellant claimed that the defendants made false statements "concerning the facts of Dallas' death; [Appellant's] involvement with Dallas' death and [Appellant's] criminal culpability, as well as, the falsity of their publications made concerning [Appellant's] businesses and business relationships." Appellant also maintained that the defendants conspired with one another to bring about the animal cruelty charges. Appellant sought 8.5 million dollars in compensatory damages, as well as a million dollars in punitive damages.

Defendant Keener filed a motion to dismiss the claims against her pursuant to the TPPA on July 20, 2020. Keener argued that Appellant's suit was a strategic lawsuit against public participation ("SLAPP") intended to chill Keener's right to free speech. Keener asserted that the TPPA prohibited the suit because Keener's statements related to a matter of public concern, specifically, animal welfare. Attached to the petition was an affidavit by Defendant Keener, in which she maintained that she learned about Appellant's criminal court case from the local news and believed what she had seen on the news to be true. Keener's affidavit also provided that the purpose of the petition was to "seek justice for Dallas."

Other defendants filed motions for a more definite statement, claiming that the allegations in the complaint were insufficient because the complaint did not provide the specific statements that Appellant claimed were tortious. A hearing was held on August 31, 2020. Appellant's counsel contended that "[i]n regards to the [TPPA], it's our overarching argument that it does not apply to this matter." Appellant maintained that Defendant Keener first published her online petition on May 9, 2019, and that the TPPA therefore did not apply because it did not go into effect until July of 2019. Appellant also

argued that animal welfare is not a matter of public concern pursuant to the TPPA and that Keener's statements were not the type the TPPA intends to protect.

The trial court determined at the August 31, 2020 hearing that Defendants Stuwa, Davis, Livesay, McCartt, and Long also wished to file TPPA petitions, and the trial court granted them an extension of time to do so. Appellant's counsel acknowledged at the August 31, 2020 hearing that under the TPPA, discovery was stayed while those petitions were pending. *See* Tenn. Code Ann. § 20-17-104(d) ("All discovery in the legal action is stayed upon the filing of a petition under this section. The stay of discovery remains in effect until the entry of an order ruling on the petition.").

Defendants Stuwa, Davis, McCartt, Livesay, and Long (together with defendant Keener, hereinafter "Appellees") then filed motions to dismiss pursuant to both the TPPA and Tenn. R. Civ. P. 12.02(6). Generally, Appellees argued that their communications were protected by the TPPA because they addressed a matter of public concern, namely, animal welfare, and because none of the statements were defamatory. They also noted that the criminal case against Appellant was extensively covered by the local media and argued that Appellant's lawsuit was meant to be "retributive and chill speech." While Appellant filed a written response to each of the motions, she made largely the same arguments in each response: 1) that Appellant's claims were not rooted in defamation and thus no heightened pleading standard applied; 2) that the TPPA did not apply because it was enacted after the statements at issue were made; 3) that Appellant's claims were not intended to limit Appellees' public participation; and 4) that Appellees' motions improperly focused on Appellant's proof, as opposed to the factual allegations in the complaint. Primarily, Appellant maintained that the Act did not apply at all. Appellant did not offer any countervailing evidence, such as affidavits, in response to the petitions, despite the TPPA providing that Appellant could do so. *See* Tenn. Code Ann. § 20-17-104.

On December 10, 2020, the trial court entered a memorandum and order dismissing all claims against Appellees pursuant to the TPPA as well as Tenn. R. Civ. P. 12.02(6), with the exception of Defendant Stuwa. Defendant Stuwa was only sued for malicious prosecution. The trial court determined that the TPPA did not apply to that claim but determined that the claim should be dismissed pursuant to Rule 12.02(6). The trial court found that the TPPA requires an award of attorney's fees when an action is dismissed under that chapter and instructed Appellees to file fee affidavits within fifteen days of the entry of the order.

The trial court then entered an order on March 5, 2021, awarding attorney's fees to counsel for Keener, Long, Livesay, and McCartt. Defendant Davis' request for fees was denied because counsel for Defendant Davis missed the deadline to file her fee affidavit. On March 16, 2021, however, counsel for Defendant Davis filed a motion to alter or amend the trial court's order awarding fees, arguing, *inter alia*, that the TPPA requires an award

- 5 -

of attorney's fees when a legal action is dismissed pursuant to that chapter. The trial court agreed with Defendant Davis and entered an order on June 24, 2021, amending its previous order and awarding Davis her attorney's fees.

From that order, Appellant appealed to this Court.

## ISSUES

Appellant raises several issues on appeal, which we rephrase slightly:

1. Whether the trial court erred in concluding that the TPPA applies to the present case.

2. Whether the trial court erred in failing to rule on Appellant's request for discovery.

3. Whether the trial court erred in applying heightened constitutional requirements to Appellant's claims against Appellees.

4. Whether the trial court erred in granting the Rule 12.02(6) Motions to Dismiss filed by Appellees Keener, Long, Stuwa and/or Davis.

Appellees[3] raise two additional issues:

1. Whether Appellant's notice of appeal was untimely.

2. Whether Appellees should be awarded their attorney's fees incurred on appeal.

## DISCUSSION

This case deals with the TPPA, Tennessee's anti-SLAPP statute.[4] However, as a threshold issue, we must determine whether this Court has subject matter jurisdiction over this appeal.

---

[3] Defendants Stuwa and Davis filed a joint brief, while Defendants Keener, Livesay, Long, and McCartt filed a joint brief.

[4] As this Court recently explained:

The term "SLAPP" stands for "strategic lawsuits against public participation," meaning lawsuits which might be viewed as "discouraging the exercise of constitutional rights, often intended to silence speech in opposition to monied interests rather than to vindicate a plaintiff's right." [Todd Hambidge, et al., *Speak Up. Tennessee's New Anti-SLAPP Statute Provides Extra Protections to Constitutional Rights*, 55 TENN. B.J. 14

"Subject matter jurisdiction relates to a court's authority to adjudicate a particular type of case or controversy brought before it." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004)). As orders and judgments entered by courts lacking subject matter jurisdiction are void, "issues regarding subject matter jurisdiction should be considered as a threshold inquiry" and "resolved at the earliest possible opportunity." *Id.* (citing *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); *Brown v. Brown*, 281 S.W.2d 492, 497 (1955)).

In civil cases, "an appeal as of right may be taken only after the entry of a final judgment." *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (citing Tenn. R. App. P. 3(a)). A final judgment adjudicates all "claims, rights, and liabilities of all the parties," *Discover Bank v. Morgan*, 363 S.W.3d 479, 488 n.17 (Tenn. 2012), and "resolves all the issues in the case, leaving nothing else for the trial court to do." *Estate of Henderson*, 121 S.W.3d at 645. When an order is nonfinal, this Court lacks subject matter jurisdiction to review it, unless, for example, the appellant pursues an interlocutory appeal, *see* Tenn. R. App. P. 9, or a statute provides the right to an immediate appeal. *See, e.g.*, Tenn. Code Ann. § 29-5-319.

In this case, the order appealed from is nonfinal. There are multiple claims against multiple defendants that, on the record before us, have never been addressed, much less resolved. For example, Defendants Carley, Bryant, West, and Lejeune did not move for dismissal of the claims against them nor do any of the trial court's orders address these parties. Likewise, the claims for negligent hiring, supervision, and training raised against Washington County have never been addressed. Because all of the claims, rights, and liabilities of all of the parties have not been adjudicated, the order appealed from is nonfinal and, ordinarily, this Court would lack subject matter jurisdiction to review this appeal.

Nonetheless, this Court has previously held that the TPPA provides parties the right to an immediate appeal to this Court when a motion for dismissal under the TPPA is either granted or denied. *See* Tenn. Code Ann. § 20-17-106; *see also Nandigam Neurology, PLC*

---

(Sept. 2019)]; *see also Sandholm v. Kuecker*, 356 Ill.Dec. 733, 962 N.E.2d 418, 427 (Ill. 2012) ("'SLAPPs . . . are lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so.'" (quoting *Wright Dev. Group, LLC v. Walsh*, 238 Ill.2d 620, 345 Ill.Dec. 546, 939 N.E.2d 389, 395 (2010))). . . . Anti-SLAPP statutes have arisen in response to SLAPP lawsuits. *See* Hambidge, *supra*, at 15 ("[A]nti-SLAPP statutes are not a recent development[;] [s]tates began enacting anti-SLAPP statutes in the 1980s in response to an increasing number of lawsuits that were filed for the purpose of discouraging the exercise of constitutional rights."); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2[d] Cir. 2013) ("[T]he point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights.").

*Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 657–59 (Tenn. Ct. App. 2021).

*v. Beavers*, 639 S.W.3d 651, 664–66 (Tenn. Ct. App. 2021). In relevant part, the TPPA provides:

> The court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals. The Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals.

Tenn. Code Ann. § 20-17-106. Construing this statute in *Nandigam*, we explained that

> section 20-17-106 confers exclusive jurisdiction upon this Court to adjudicate the appeal of an order "dismissing or refusing to dismiss a legal action pursuant to a petition filed under [the TPPA]." Tenn. Code Ann. § 20-17-106. *Appeals pursuant to section 20-17-106 lie in this Court whether the order is final or interlocutory*, and regardless of whether the case is appealed from general sessions or circuit court.

*Id.* at 667 (bracketing in original, emphasis added). We also noted in *Nandigam* that because the TPPA provides the right to an immediate appeal, "a party's right to appeal the disposition of a TPPA petition is triggered not by the eventual entry of a judgment resolving the entire case, but rather only by a ruling on the petition." *Id.* at 662.

Based on the foregoing, the parties disagree about whether Appellant should have filed her notice of appeal within thirty days of the trial court's December 10, 2020 order ruling on the TPPA petitions, or whether it was sufficient for Appellant to file the notice after entry of the June 24, 2021 order fully resolving the issue of Appellees' attorney's fees.[5] Appellees maintain that because the trial court ruled on their TPPA petitions on December 10, 2020, Appellant's notice of appeal should have been filed within thirty days of that order.

There is, however, an even more threshold question that must be addressed before we can determine whether Appellant's notice of appeal was timely under the TPPA – whether the TPPA applies to this case at all. As explained above, the order appealed from is nonfinal, and this Court would ordinarily lack jurisdiction over this appeal. The only possible way the appeal may proceed, then, is if it is a properly lodged immediate appeal provided by section 20-17-106.[6] Appellant maintains, however, that the TPPA cannot apply to this case at all, insofar as the TPPA was enacted on July 1, 2019, and Appellant claims that the tortious acts occurred in May of 2019.

---

[5] It is true that, under many circumstances, the issue of outstanding attorney's fees renders an order nonfinal and not appealable. *See Nandigam*, 639 S.W.3d at 661.

[6] Appellant did not seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.

According to Appellant, the trial court erred in applying the TPPA "retroactively" to statements purportedly made by Appellees in May of 2019. Article I, section 20 of the Tennessee Constitution provides that "no retrospective law, or law impairing the obligations of contracts, shall be made." As our Supreme Court has explained, "this provision [prohibits] laws 'which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed.'" *Doe v. Sundquist*, 2 S.W.3d 919, 923–24 (Tenn. 1999) (quoting *Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn. 1978)). Although "difficult to define with precision," a "vested right" "is one 'which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice.'" *Id.* at 923.

In this case, Appellant argues that her vested rights have been impaired in contravention of the Tennessee Constitution due to application of the TPPA. We conclude, however, that this issue is waived.

We reach this conclusion for multiple reasons. First, while Appellant is adamant that all of the tortious activity giving rise to this case occurred prior to July 1, 2019, the record has not been appropriately developed on this issue. *See* Tenn. R. App. P. 24; *see also Jennings v. Sewell Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005) ("An appellant is responsible for preparing the record and providing to the appellate court a 'fair, accurate and complete account' of what transpired at the trial level." (quoting *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993))). Appellant attached dozens of social media posts to her complaint, asserting that the statements therein were tortious. Almost none of the posts are date-stamped, however, and it is unclear from the face of these attached exhibits when the posts were actually made.[7] Nor does the complaint specify when each of the purportedly tortious publications and/or statements were made.[8] Rather, Appellant alleged in her amended complaint that "[s]ince May 2, 2019, certain named Defendants have commenced a campaign of disseminating false and misleading information relating to Dallas' death[.]" In a different part of the amended complaint, Appellant claimed that certain defendants "continuously published or spread falsehoods and defaming statements concerning Dallas's death . . . since [Appellant's] arrest on May 7, 2019." Accordingly, Appellant's own allegations suggest that the purported tortious activity occurred over an undefined period of time.

The window of time between May 2, 2019, and July 1, 2019, is small. On the record before us, it is unclear whether all of the statements complained of were made prior to the TPPA's enactment, nor is it clear when each of Appellant's claims against each defendant

---

[7] Additionally, some of the exhibits are unreadable and indiscernible because of how they are printed.

[8] For her part, however, Defendant Keener admitted in a pleading that her petition regarding Dallas was circulated online on May 9, 2019. Additionally, the statements complained of regarding Defendants Davis and Stuwa appear to have been made in the course of criminal proceedings occurring in May of 2019.

actually accrued. This is compounded by the fact that many claims were made against multiple defendants. Nonetheless, Appellant's primary argument throughout this case has been that her cause of action accrued prior to the TPPA's enactment. By Appellant's own design, dates are crucial in this case, yet we have not been given the full picture of the timeline. Insofar as Appellant contends that the TPPA was inappropriately applied due to the timeline of Appellees' statements and the statute's enactment, it was incumbent upon Appellant to clarify that timeline in the record. Nowhere in the record has Appellant clearly stated the date upon which she contends her causes of action actually accrued, and we are not inclined to construct this argument for Appellant. *See Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her[.]").

Second, Appellant's argument is that as applied, the TPPA violates Article I, section 20 of the Tennessee Constitution. Nonetheless, "the Office of the Attorney General must be notified of any effort to challenge the Constitutionality of a Tennessee statute." *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *7 (Tenn. Ct. App. Oct. 5, 2016) (citing Tenn. Code Ann. § 29-14-107). Expounding on this requirement, this Court recently explained:

> The requirement that notice be provided to the Tennessee Attorney General is twofold. *Waters v. Farr*, 291 S.W.3d 873, 918-19 (Tenn. 2009) (J. Koch, concurring in part). Providing notice to the Attorney General of a constitutional challenge to a state statute "enables the Office of the Attorney General to discharge its responsibility to defend the constitutionality of state statutes" and ensures that the contested statute is vigorously defended. *Id.* . . . . "Before we can consider an attack on the constitutionality of a statute, the record must reflect compliance with Tennessee Rule of Civil Procedure 24.04, Tennessee Rule of Appellate Procedure 32, and Tennessee Code Annotated section 29-14-107(b), which all require that notice be provided to the Attorney General." *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 731 (Tenn. Ct. App. 2017)[.]

*Daniels v. Trotter*, No. E2020-01452-COA-R3-CV, 2022 WL 2826848, at *7 (Tenn. Ct. App. July 20, 2022); *see also Waters*, 291 S.W.3d at 918 (explaining that "[c]ompliance with [Tenn. Code Ann. § 29-14-107] and the related rules is mandatory").

In the present case, nothing in the record indicates that any party provided notice to the Tennessee Attorney General either in the trial court proceedings or on appeal. Under similar circumstances, we have deemed "as applied" constitutional challenges waived. *See, e.g., In re Cannon H.*, 2016 WL 5819218, at *7 (waiving argument that Tenn. Code Ann. § 36-6-106(a) was unconstitutional as applied); *In re Piper H.*, No. W2015-01943-COA-R3-JV, 2016 WL 5819211, at *6 (Tenn. Ct. App. Oct. 5, 2016) (same).

In light of all of the foregoing, Appellant's argument that the TPPA was unconstitutionally applied in this case is waived. The trial court's ruling that the TPPA applies therefore stands.

### Timeliness of appeal under Tenn. Code Ann. § 20-17-106

Having determined that the TPPA applies to the case at bar, we turn to whether Appellant's appeal is timely under the Act. As addressed at length above, we may only exercise jurisdiction over the present appeal if it was timely filed according to Tennessee Code Annotated section 20-17-106, as the order appealed from is nonfinal and was not filed as an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. Appellees maintain that appeals pursuant to section 20-17-106 must be filed within thirty days of a trial court's order ruling on a TPPA petition.[9] As a matter of first impression, we agree.

To reiterate, the TPPA provides that a "court's order dismissing or refusing to dismiss a legal action pursuant to a petition filed under this chapter is immediately appealable as a matter of right to the court of appeals." Tenn. Code Ann. § 20-17-106. We construed section 106 in *Nandigam*, upon which Appellees now rely. 639 S.W.3d 651. As such, a brief review of that case is helpful.

In *Nandigam*, the plaintiff doctor filed a defamation suit against a patient's daughter, after the woman posted a poor review of the doctor and his practice on Yelp!. *Id.* at 654. The doctor first filed his action in the Circuit Court for Wilson County, but then dismissed and re-filed the action in the General Sessions Court for Wilson County. *Id.* When the defendant filed a petition to dismiss the action pursuant to the TPPA, the doctor argued that the TPPA was a rule of civil procedure that did not apply in the general sessions court. *Id.* at 655. The general sessions court disagreed and concluded that the Yelp! review was protected by the TPPA and that the doctor's lawsuit was a SLAPP. *Id.* at 656. The general sessions court also indicated that it would award the defendant her attorney's fees but did not specify a certain amount.[10] *Id.*

The plaintiff appealed the case to the circuit court, and the defendant again filed a motion to dismiss pursuant to the TPPA. *Id.* The defendant also argued, however, that per section 20-17-106, the appeal was not properly before the circuit court. *Id.* The circuit court agreed and transferred the case to this Court. *See* Tenn. Code Ann. § 16-1-116. On appeal, we were tasked with determining, *inter alia*, whether this Court was deprived of

---

[9] As Appellant maintains that the TPPA does not apply to this case, she does not address the issue of timeliness in her principal brief. Nor did she file a reply brief addressing this issue.

[10] The TPPA requires an award of attorney's fees "if the court dismisses a legal action pursuant to a petition filed under this chapter." Tenn. Code Ann. § 20-17-107.

- 11 -

jurisdiction in light of the unresolved attorney's fees and whether the plaintiff had a right to an appeal in circuit court before proceeding in this Court. *Id.* at 657.

In ruling for the defendant, we explained that the TPPA provides expedited appellate review of potential SLAPPs, noting that one purpose of anti-SLAPP legislation is that people "'have a right *not* to be dragged through the courts because [they] exercised [their] constitutional rights[,]'" and that such protection is "'in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process.'" *Id.* at 662–63 (quoting *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 147 (2d Cir. 2013)). We concluded that under section 20-17-106, "orders involving the disposition of a TPPA petition are 'immediately appealable,' regardless of whether the order is final or interim." *Id.* at 662 (quoting Tenn. Code Ann. § 20-17-106). We also explained that "a party's right to appeal the disposition of a TPPA petition is triggered not by the eventual entry of a judgment resolving the entire case, but rather only by a ruling on the petition." *Id.*

In light of *Nandigam*, Appellant could have appealed the trial court's December 10, 2020 order dismissing several of her claims pursuant to the TPPA. We were explicit in *Nandigam* that the right to immediately appeal that interim order was "triggered" notwithstanding the fact that the issue of attorney's fees remained outstanding. What we did not address in *Nandigam*, however, that is at issue in this case, is whether an immediate appeal under section 20-17-106 *must* be filed within a certain amount of time, and, if so, what that time limit is. Appellees argue that implicit in the *Nandigam* opinion is that Appellant's appeal pursuant to section 20-17-106 should have been filed within thirty days.

Contrary to Appellees' argument, *Nandigam* does not answer this question. In *Nandigam*, the time limit in which to file an immediate appeal under section 20-17-106 was not at issue, insofar as the plaintiff-appellant timely appealed the case from general sessions court to circuit court, and the circuit court then transferred the case to this Court. *See* Tenn. Code Ann. § 16-1-116. Nonetheless, we agree with Appellees' ultimate point that Appellant's notice of appeal was untimely, and we hold that immediate appeals under section 106 must be filed within thirty days of a court's order "dismissing or refusing to dismiss a legal action pursuant to a petition filed under" the TPPA. Tenn. Code Ann. § 20-17-106.

While section 20-17-106 does not itself provide a time limit in which to file appeals thereunder, several factors buttress our conclusion. First, that section provides that orders adjudicating a TPPA petition are "immediately appealable" to the Court of Appeals. The statute then provides that the "Tennessee Rules of Appellate Procedure applicable to appeals as a matter of right governs such appeals." The time in which to file an appeal as a matter of right under the Tennessee Rules of Appellate Procedure is thirty days. Tenn. R. App. P. 3; Tenn. R. App. P. 4(a).

- 12 -

Further, an "appeal as a matter of right" refers to Tenn. R. App. P. 3, which addresses appeals from final judgments. In this sense, the language of section 20-17-106 is slightly confusing because what that section essentially provides is a statutory right to an interlocutory appeal if the case is not fully adjudicated. Nonetheless, like appeals as of right, interlocutory appeals must be filed "within 30 days after the date of entry of the order appealed from." Tenn. R. App. P. 9(b).

Consequently, whether an order adjudicating a TPPA petition is final or nonfinal, the only logical conclusion is that an appeal therefrom must be filed within thirty days of the entry of the order adjudicating said petition.

Finally, this conclusion is consistent with the intent and purpose of the TPPA, which is, *inter alia*, to provide defendants with expedited review when they have been subject to a SLAPP. *See Nandigam*, 639 S.W.3d at 662–63. Indeed, the procedural posture of Appellant's case makes little sense in light of the observed purpose of the law, inasmuch as Appellant waited nearly eight months before seeking review of the trial court's decision on the Appellees' TPPA petitions.

Accordingly, appeal of a trial court's order "dismissing or refusing to dismiss a legal action pursuant to a petition filed under th[e] [TPPA]" must be filed within thirty days of the entry of that order. Tenn. Code Ann. § 20-17-106. This is true whether the order is final or interlocutory. Because Appellant's notice of appeal was not timely filed, we agree with Appellees that this Court lacks jurisdiction to consider the appeal and the appeal must be dismissed.

Notwithstanding our conclusion that the appeal must be dismissed, a final issue remains. Appellees request their attorney's fees incurred on appeal. Recently, our Supreme Court opined on whether a court may award attorney's fees when it has determined that it lacks subject matter jurisdiction:

> We begin with an obvious proposition– a court has "jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance." *Barry v. State Bar of Cal.*, 2 Cal.5th 318, 212 Cal.Rptr.3d 124, 386 P.3d 788, 793 (2017) (quoting *Rescue Army v. Mun. Ct.*, 28 Cal.2d 460, 171 P.2d 8, 10-11 (1946)). Even when a case is dismissed for lack of subject matter jurisdiction, the court retains power to award attorney's fees and costs. *Id.* As the United States Supreme Court has explained, requests for attorney's fees are "collateral" and have "a distinct and independent character" from the underlying suit. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 169, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (footnote omitted) (citation omitted). Courts should view a request for attorney's fees as an

- 13 -

"'independent proceeding supplemental to the original proceeding and not a request for modification of the original decree.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (quoting *Sprague*, 307 U.S. at 170, 59 S.Ct. 777); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 136, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926-27 (7th Cir. 2000); *Devon Energy Prod. Co. v. KCS Res., LLC*, 450 S.W.3d 203, 220 (Tex. App. 2014); *Hous. Auth. of Seattle v. Bin*, 163 Wash.App. 367, 260 P.3d 900, 903 (2011) (citation omitted); *Kalich v. Clark*, 152 Wash.App. 544, 215 P.3d 1049, 1051 (2009). *Cf. J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 123 S.W. 622, 637 (1909) (dismissing a case for lack of subject matter jurisdiction "and adjudging costs"): *Honeycutt ex rel. Alexander H. v. Honeycutt*, [No.] M2015-00645-COA-R3-CV, 2016 WL 3662166, at *1, *5 (Tenn. Ct. App. June 30, 2016) (resolving an outstanding request for attorney's fees even though the order of protection had expired and the appeal was otherwise moot). So, while it is true that a court lacking subject matter jurisdiction has no authority to issue orders on the merits of the case, *J.W. Kelly & Co.*, 123 S.W. at 637, the court retains authority to adjudicate and grant a request for attorney's fees incurred in determining that it lacks jurisdiction.

*New v. Dumitrache*, 604 S.W.3d 1, 20 (Tenn. 2020). The *New* Court then explained that "[w]hen adjudicating such an 'independent proceeding'–a request for attorney's fees–most states, including Tennessee, apply the 'American rule.'" *Id.* The American Rule provides that "a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney's fees; or (2) some other recognized exception to the American Rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (2005)).

The basis of Appellees' request is the TPPA, which provides that "[i]f the court dismisses a legal action pursuant to a petition filed under [the TPPA], the court shall award to the petitioning party . . . reasonable attorney's fees[.]" Tenn. Code Ann. § 20-17-107(a)(1). While section 107 does not explicitly mention appellate attorney's fees, this Court has previously construed section 107 as providing for appellate attorney's fees. *See Nandigam*, 639 S.W.3d at 669–70 ("[O]ur Supreme Court has explained that 'legislative provisions for an award of reasonable attorney's fees need not make a specific reference to *appellate* work to support such an award where the legislation has broad remedial aims.'" (quoting *Killingsworth v. Ted Russell Ford*, 205 S.W.3d 406, 409 (Tenn. 2006))). As such, appellate attorney's fees are available provided that "the [lower] court dismisses a legal action pursuant to a petition filed under [the TPPA] and that such fees are properly requested in an appellate pleading." *Nandigam*, 639 S.W.3d at 670.

- 14 -

In this case, the trial court dismissed the claims against Appellees pursuant to the TPPA, and Appellant failed to take a timely appeal. In their briefing to this Court, Appellees requested their appellate attorney's fees. Accordingly, we conclude that Appellees are entitled to an award of their attorney's fees incurred on appeal.

## CONCLUSION

For the foregoing reasons, this appeal is dismissed, and the matter is remanded to the Circuit Court for a determination of the proper amount of attorney's fees Appellees are entitled to for defending this appeal. Costs of this appeal are assessed to the appellant, Randolyn Laferney.

KRISTI M. DAVIS, JUDGE